State ex rel. Henshall vs. Ludington and others.

STATE ex rel. HENSHALL vs. LUDINGTON and others.

GRAHAM LIQUOR LAW: (1, 2) *Power of legislature over sale of intoxicating liquors.* (3, 4) *Sections 1 and 6 of the law valid, and to be construed together. Effect of the liquor seller's bond.* (5) *Licenses issued without bond given, void.*

MANDAMUS: (6, 7) *When not granted. Alternative writ quashed.*

1. The legislature, as an exercise of the police power, may *entirely prohibit* the selling or giving away of ardent or *intoxicating liquors* to be used as a beverage.

2. While, in an act prescribing conditions upon which such liquors may be sold, the legislature cannot transcend the settled principles of fundamental law respecting the trial or mode of prosecution or punishment of a party charged with an infraction of the provisions of the act, or with having incurred some liability under it, it may in other respects attach to the act of sale such consequences, civil or criminal, as it pleases.

3. By the terms of sec. 1, ch. 127, Laws of 1872, it is declared to be unlawful for any person to sell intoxicating liquors without having first obtained a license therefor; and it is further enacted, by way of proviso, that no person shall be granted such a license without giving a certain bond, " conditioned for the payment of all damages to any person which may be inflicted upon or suffered by them, either in person or property or means of support, by reason of so obtaining a license, selling or giving away intoxicating drinks, or dealing therein," and that such bond may be sued or recovered upon for the use of any person, or his legal representative, who may be injured by reason of the selling or giving away of intoxicating liquors by the person so obtaining the license. By the terms of sec. 6, " Every husband, wife, child, parent, guardian, employer, or other person, who shall be injured in person or property or means of support by any intoxicated person, or in consequence of the intoxication of any person, shall have a right of action  *  *  against any person who shall, by selling or giving away intoxicating liquors, have caused the intoxication, in whole or in part, of such person, and any person who shall have caused such intoxication as aforesaid shall be liable for all damages sustained, and for exemplary damages." *Held*, that these provisions are valid.

4. Said sections 1 and 6 are to be construed together, and the latter defines more specifically and limits the obligation of the bond required by the former.

State ex rel. Henshall vs. Ludington and others.

5. Licenses issued while this act was in force, without the giving of the bond thereby required, *held* to be *void.*

6. *Mandamus* will not issue to compel the revocation of such void licenses by the municipal authorities; and an alternative *mandamus* having been granted for that purpose, it is *quashed* on motion.

7. It is always a sufficient reason for refusing or quashing a *mandamus,* that there exists an ample remedy, by suit or prosecution at law, to test the questions involved in such writ.

APPLICATION for a *Mandamus.*

The petition of the relator alleged, in substance, that *Harrison Ludington,* as mayor of the city of Milwaukee, had granted license to certain named persons, and to numerous persons not named, to sell spirituous and intoxicating liquors in said city, such persons not having filed with the proper authorities the bond required by sec. 1, ch. 127, Laws of 1872 ; and it prayed this court for a writ of *mandamus* commanding the said *Ludington,* as mayor, and the respondents *Mahoney* and *White,* as clerk and comptroller of said city, respectively, not to sign or countersign, seal or issue any such license without requiring said bond in each case to be given ; and also commanding said *Ludington* to revoke the licenses, in whatever form, already issued by him to the persons named, and all other licenses similarly issued by him, without the filing of such bond.

An alternative *mandamus* was granted, and served; and the respondents moved to quash the same.

*Emil Wallber,* City Attorney, and *J. J. Lalor,* Assistant City Attorney, for the motion, argued, 1. That to show the provisions of sec. 1, ch. 127, Laws of 1872, *unconstitutional,* it was not necessary to point out any specific clause of the state constitution which was violated thereby; but that the dictates of common sense and of common justice, the first principles of reason and of sound morals, so far as they relate to the rights of man, and so far as they are necessary to guaranty to the citizen his life, his liberty and his property, are part and parcel of the constitution, and any legislative enactment which con-

flicts with them is so far void. *Durkee v. Janesville*, 28 Wis., 464, and cases there cited; *Dr. Bonham's Case*, 8 Rep., 118 a; *Forbes v. Cochrane*, 2 Barn. & Cress., 471 ; *Gorham v. Bp. of Exeter*, 5 Exch., 671. 2. That the act was, however, in violation of a specific provision of the constitution, to wit, that clause of sec. 9, art. I, which declares every person entitled to obtain justice "conformably to the laws;" that this expression is equivalent to "due process of law," and the "*per legem terræ*" of *magna charta*, and they all refer to *a trial according to the course of the common law.* Crabb's Hist. Eng. Law, 2 ; 4 Hill, 146, and cases there cited; 2 Yerg., 599; 13 N. Y., 445. 3. That the bond required by the first section of the act is one which, if given, could under no circumstances be recovered upon by the rules of the common law. 4. That the enactment is unconstitutional, (1.) Because, contrary to the law of the land, it requires a person to hold himself responsible for the consequences of a *lawful* act. *Stoughton v. The State*, 5 Wis., 291. (2.) Because it requires a person to hold himself responsible for the *remote* consequences of his lawful act. Broom's Leg. Max., 206; *Olmsted v. Brown*, 12 Barb., 657 ; *Butler v. Kent*, 19 Johns., 223 ; *Scott v. Hunter*, 46 Pa. St., 192 ; *Smith v. Thomas*, 23 Ind., 69 ; *Macon & W. R. R. Co. v. Winn*, 26 Ga., 250 ; 9 Ohio St., 484 ; *Stewart v. Southard*, 17 Ohio, 402 ; *Spear v. Cummings*, 23 Pick., 224 ; *Anthony v. Slaid*, 11 Met., 290. (3.) Because, contrary to the law of the land, it holds one man responsible for the act of another over whom he has no control. (4.) Because, contrary to the law of the land, it would compel a man to hold himself liable to punishment for a wrong in which there is, on his part, neither intent nor act. (5.) Because, contrary to the law of the land, it gives a vested right to one party to be protected against consequential injuries arising from a proper exercise of rights by another. Cooley's Con. Lim., 304; *Tinsman v. R. R. Co.*, 2 Dutch., 148. (6.) Because, contrary to the law of the land, it subjects one class of men to legislation unequal and partial in its operation.

Cooley, 389. (7.) Because it is against public policy and *contra bonos mores*. It offers a premium to intemperance, and holds out the strongest inducements to crime, turning the state into one vast insurance company against the evils of intemperance, and, in the case of the liquor seller, introducing into his business an element of uncertainty which makes it the worst kind of gambling. (8.) Because, contrary to the law of the land, it enables the man who is guilty of intoxication to *take advantage of his own wrong*. (9.) Because, contrary to the law of the land, it makes that an injury in law, to which a man himself assents. *Volenti non fit injuria*. *Comm. v. Robbins*, 26 Pa. St., 165, 167. (10.) Because it would introduce into the law, as a principle of evidence, the fallacy, *post hoc ergo propter hoc* — a principle of uncertainty. 5. That the respondents should not be held to exact the bond, because, if given, it would be a *nullity*, since no one, by the law of the land, could recover upon it. A *mandamus* will not be granted to compel performance of an act which would have no effect when done. Moses on Mandamus, 58, 89, 123. 6. That the legislature has undoubtedly the constitutional power to pass very stringent laws regulating the sale of intoxicating liquors, and counsel would not undertake to say here how near it might come to prohibiting their sale altogether, or limiting it to chemical, medicinal and other kindred purposes; but that the legislature could not authorize the act of selling and then punish it; nor could it inflict any punishment for the act otherwise than "conformably to the laws." 7. That the liquor dealer does not *agree* to the imposition upon him of these unjust and illegal terms. He may have been in business before the law was passed, and his means were invested in it. If the act is enforced, he has no choice but to submit or lose his business; and he submits under protest. Besides, the individual *cannot waive* the benefit of rights which are founded on public policy, or the policy of the law. *Maxwell v. Read*, 7 Wis., 582; *Cancemi v. The People*, 18 N. Y., 128; *Gaines v. Buford*, 1 Dana, 499.

*J. F. McMullen* and *G. W. Lakin*, for the relator, argued, in substance, 1. That the power of the legislature of this state to regulate, restrain and limit the manufacture and sale of intoxicating liquors (as it does also that of gunpowder, camphene, Texas cattle, firearms, threshing machines, etc.), is not an open question. 2. That the person who objects to an act of the state legislature as unconstitutional, must point out explicitly what provision of the federal or state constitution, either expressly or by fair inference, prohibits such legislation. 3. That the provisions of sec. 1 of the act, are to be construed with and limited by sec. 6, which is *in pari materia* (Smith's Comm., 761 ; 2 Cranch, 33 ; Potter's Dwarris, 188, 189 ; *Harrington v. Smith*, 28 Wis., 43, 59); and that when so limited, the act is not open to the objections urged against it. The right of action given is for causing the intoxication, in whole or in part, of any person ; the person to whom it is given is the person who is injured, or his legal representative; and the damages are such as are occasioned by the intoxication of the person to whom the liquor was sold by the person sued, with exemplary damages where the facts seem to require it. The persons on whose behalf, and the persons against whom, an action may be brought, and the breach of the bond for which an action will lie, are thus definitely prescribed. There is no uncertainty in the act, thus construed; and there is nothing in it requiring the allowance of remote damages. 4. That there is no conclusiveness in the objection that a man cannot be mulcted in damages for the consequences of a lawful act, where he is without fault. (1.) It is conceded that the legislature might prohibit the sale altogether. It may then, clearly, allow the sale, yet subject the seller to certain liabilities growing out of it. The theory of the act is, that the *article* sold is dangerous, and that the seller must take the risk of dealing in so dangerous an article. (2.) The law is not wanting in cases where a man is held liable, in a lawful business, for the acts of another, and that, too, where he is in no sense a joint wrongdoer with the person doing the

State ex rel. Henshall vs. Ludington and others

damage. Thus, in the case of a common carrier, the common law, for reasons of public policy, as a necessary incident to the kind of business he carries on, holds him liable for the acts of robbers, or for consequences in no way depending upon any fault or wrongdoing on his part. 5. That the principle underlying the act, and which brings it within the proper scope of legislation, is, that to the government of the state belongs the protection of the public safety, the public order, and the general welfare. 6. In support of the general principles of the act, counsel cited *Fire Department v. Helfenstein*, 16 Wis., 137 ; ch. 139, Laws of 1850 ; *Gorsuth v. Butterfield*, 2 Wis., 237 ; *In re Ruth*, 10 Am. Law Reg., 767 (32 Iowa, 250) ; *Lincoln v. Smith*, 27 Vt., 328 ; Ohio Laws of 1854, p. 153 ; *Schneider v. Hosier*, 21 Ohio St., 98 ; *People v. Gallagher*, 4 Mich., 244 ; Cooley's Con. Lim., 583. 7. To the point that respondents disobeyed the law by granting licenses without requiring the bond, they cited *City of Louisville v. Kean*, 18 B. Mon., 9.

DIXON, C J. Counsel for the respondent frankly concede the constitutional power of the legislature to entirely prohibit the selling or giving away of ardent or intoxicating liquors or spirits to be used as a beverage, and attack only certain provisions of the act as being inconsistent with the authority to sell conferred, and repugnant to the constitutional rights of the citizen engaged in an authorized and lawful traffic and business. The point thus yielded, and as to which there would seem to be little room for controversy at the present day, of the general power of the legislature over the subject acted upon, not only very much narrows the field of contest and investigation, but, as it appears to us, also takes away all grounds of constitutional support for the objections specially urged against particular clauses and portions of the act. Assuming the general power of the legislature over the subject to the extent of prohibiting entirely the traffic in intoxicating liquors or drinks, necessarily involves, as it seems to us, the admission of the ut-

most limit of legislative discretion in prescribing the conditions of sale, and establishing the liabilities, both civil and criminal, of persons engaged in the trade, in case the legislature sees fit in any manner or under any circumstances of restriction or responsibility to authorize such sale or trade. The law being prospective only in its operation, the legislative power to prohibit all sales must carry with it, as it seems to us, that of declaring the precise terms and conditions upon which any particular sale may take place. This would seem to be so by the familiar principle ' upon which the greater is always said to include the less. Possessed of the power of absolute prohibition under the constitution, it seems to follow that any relaxation from a plenary exercise of such power, or qualified or conditional enactment by the legislature by which license to sell may be obtained in the way and subject to the liabilities imposed by the act, cannot be an encroachment of legislative authority, unless indeed the legislature should transcend some settled principle of fundamental law, respecting the trial or mode of prosecution or punishment of the party charged with an infraction of the provisions of the act, or with having incurred some liability under it. Acting in obedience to those fundamental principles, in accordance with which the guilt or liability of the party charged must first be ascertained and established, and the judgment of the law rendered against him, it seems competent for the legislature to attach such consequences, civil or criminal, to the mere act of sale, as it pleases, even when such sale is made in pursuance of an authority of the legislature, qualifiedly given for that purpose. Empowered to prohibit entirely, the legislature may license *sub modo*, or conditionally only. It may affect the licensee with such restraints, conditions and responsibilities as it pleases, growing out of the act of sale. It may visit him with such consequences as it sees fit, proceeding from the same act. It may couple the license with conditions so oppressive, burdensome and unjust that no citizen can afford to apply for or accept the privilege and engage in the business,

and thus the act, though nominally otherwise, may amount to a prohibitory law. These conclusions seem unavoidably to flow from the position, admitted or not denied, that the legislature possesses the unqualified power of prohibition. The legislature may not take away the right of trial by jury, or of proceeding by due process of law to ascertain the fact of violation, or of liability incurred. It may not require the accused to plead guilty, to confess judgment, or to give evidence against himself. Neither may it create any arbitrary or violent presumption of guilt upon facts equally or more consistent with innocence. It may not change the rules of evidence, or the burden of proof established according to the principles of the common law, and secured and made perpetual by the constitution; nor destroy vested rights, nor punish one man for the delinquencies or misconduct of another, nor, without his consent, make him answerable in damages for the injurious consequences of the acts of another, in which he had no participation, or with which he was wholly disconnected. These and other like things the legislature may not do; but with respect to the act of sale, over which the power of legislation is conceded to be unlimited, and in respect to the responsibility which shall attach to the doing of that act or the conditions under which it may be done, the way seems open for the legislature to enact whatsoever it pleases. As already more than once observed, this conclusion seems clearly to result from the unrestricted and arbitrary nature of the discretion vested in the legislature in the exercise of what is termed the police power of the state, which is said to be a right to regulate all such matters, found in the first principles of good government and self-protection. The legislature may say to all citizens and persons within the state, that they shall not sell, give away or traffic in at all, as a beverage; or it may say that they may do so, being responsible for all the injurious consequences of their acts, which consequences are pointed out and defined by previous law. The power of the legislature in this respect is like that which it possesses in creating and con-

ferring rights and franchises upon a corporation, which must be such, and such only, as it prescribes. It may declare, for example, that a railway company applying for a franchise shall be an unqualified insurer of the safety of all goods entrusted to its care. Fire, though a very useful, is at the same time a very dangerous element, and the legislature may declare, as it has done in Massachusetts and several other states, that any railroad corporation shall be absolutely responsible in damages for any injury done to any building or other property, by fire communicated by a locomotive engine of such railroad corporation. *Ross v. Railroad Co.*, 6 Allen, 87.

And herein, as this court conceives, consists the chief defect and fallacy of the position assumed and argued with so much ingenuity and research by the learned counsel for the respondent. They forget, as it appears to us, that the subject with which we are dealing is not one of those pertaining to the primary and fundamental rights of the citizen, and as to which no unlimited control has been vested in the legislature. They seem to overlook this principal ground of distinction, and argue as if the action of the legislature was an infringement of the natural and inalienable rights of the citizen, declared and guarantied by the constitution, instead of the exercise of a discretionary power against which no limit has been set by that instrument. And this, we think, is the very turning point of the controversy, namely, that the legislature may grant or withhold authority to sell at its pleasure, and, granting such authority, it is held by the licensee at the mere pleasure or grace of the body granting it. It is held by him, not as a matter of primary and absolute right, but as a favor, which, like all favors, must be received upon such terms and conditions, and subject to such burdens and inconveniences as the donor thinks proper to impose, and the donee elects to accept. Unlike other trades and employments which it is the right of the citizen to pursue, undisturbed by arbitrary legislative interference and control, the person who engages in this, must, within the limitations

above indicated, do so subject to such disadvantages and restraints as may be prescribed by the law making power which authorizes it.

It is fallacious, therefore, to argue from the incompetency of the legislature in other cases, that there exists no legislative power to make harsh and unjust discriminations, or to enact inequitable and oppressive conditions, upon a subject like this. Conceding that the operation of the law will be what counsel say, and that their criticisms of its provisions are well founded and true, still these do not annul the law or affect its validity in a constitutional sense, but only render it "void in its *obligatory quality on the mind*, and therefore determine it as the proper object of abrogation and, repeal, so far as regards its civil existence." They are proper arguments to be addressed to the legislature, but not to this court. This court must accept the law, as counsel must, and as all citizens must, just as the legistature has deemed expedient to enact it. Speaking in the sense of that "immovable principle" of natural justice which should govern all legislative bodies in their enactments, but not in that restricted sense of the constitution which leads to the disregard or abrogation of the expressed will of the legislature by any other than the legislative body itself, it has been observed by one of the greatest statesmen and wisest political philosphers of modern times, that "in reality there are two, and only two, foundations of law ; and they are both of them conditions without which nothing can give it any force — I mean equity and utility. With respect to the former, it grows out of the great rule of equality, which is grounded upon our common nature, and which Philo, with propriety and beauty, calls the mother of justice. All human laws are, properly speaking, only declaratory ; they may alter the mode and application, but have no power over the substance of original justice. * * * Law is a mode of human action respecting society, and must be governed by the same rules of equity which govern every private action."— Burke's Works, vol. 6, p. 22.

State ex rel. Henshall vs. Ludington and others.

If, therefore, the legislature has exceeded the limits of natural equity by the statute in question, in imposing conditions and declaring liabilities for acts done under the license granted; if it has made the licensee liable for damages which are remote or consequential, when by the rules of the common law and the principles of natural justice he should only be held responsible for those that are proximate or direct; if it has made him answerable in full damages, when in truth his act was only in part, and it may have been in a very small part, the cause of the injury complained of; if it charges him with the consequences as of an act partially or wholly wrongful or criminal in its nature, but which he innocently performed; and if, in fine, the statute is justly subject to all the objections urged against it by counsel, still the answer must be, that the remedy is of a kind which must be sought in the legislative, and not in the judicial department of the government. They may constitute the best of reasons for legislative modification or repeal, but are none whatever for arresting the operation of the law by the judgment of this court.

The foregoing observations, we believe, meet all the constitutional objections which have been urged, and leave only one of that kind, concerning which more particular notice and comment seem to be required. It is assumed that the law legalizes or sanctions, in an unqualified sense, the act of sale by the party who has complied with the formal requirements prescribed, and obtained a license in the manner provided for by it; and then it is argued that the legislature has no power to inflict penalties or mulct the party in damages for the performance of a lawful act. The difficulty with this proposition is, as will be seen from the course of reasoning above adopted (if such reasoning be correct), that it assumes that to be an absolutely lawful act, which is so conditionally, or with qualifications only — expressly so made by the very terms of the law which authorizes the sale. It enters into and becomes a part of the license or authority to sell, that the individual accepting

the same, bestowed *ex mero motu* by the legislature, takes it subject to the burdens thus lawfully imposed. The terms and conditions annexed by the law and qualifying the authority, inhere in and run with the license, and bind and restrain the licensee. He consents to them by accepting the license. The law is to be construed as a whole, and all its parts looked to with a view to their operation and effect on each other, conformably to the intention of the legislature. The form of enactment, being that by way of proviso appended to the clause granting authority to sell, is such as to make the conditional nature of the license most clear and indisputable. The person or persons licensed are permitted to sell, but not otherwise than upon the conditions named in the proviso of the first section. He or they must enter into the bond therein prescribed, and submit to the obligations thereby imposed, and to the liabilities fixed and declared by the sixth section. For, as we read and understand the statute, and as we think the legislature evidently intended, the first and sixth sections are to be construed together. The bond provided for in the first section *is to* secure the liquidation and payment of the damages recovered under the sixth. The language of both sections sufficiently indicates this, so that the sixth section, which is more specific in its terms and accurate in the definition of the liabilities imposed, operates as a limitation upon the general words contained in the first, and restricts the general obligation of the bond to the class of cases or kind of damages mentioned in the sixth.

The court has thus, at the urgent solicitation of counsel on both sides, considered and expressed its opinion upon the constitutional questions presented and argued upon the motion to quash the alternative writ of *mandamus*, and it has done so without first adverting to the question, preliminary in its nature, whether the case made by the petition is in any way a proper one for the application of the remedy, which question, had it first been considered, would have resulted in the decis-

ion of no other. No writ of *mandamus* can properly issue in such a case as this.

The licenses issued without the giving of the bond being void, of course no revocation of them by the mayor is necessary. It would be a merely idle act for him to do so, and a still more idle act for the law or this court to require it to be done. But whether the licenses were void or not, there existed ample remedy by suit or prosecution at law to test the questions and settle the controversy, which of itself is always sufficient cause for refusing the writ, or for quashing it, if it has been improperly issued.

It is a circumstance not perhaps unworthy of observation here, that almost at the commencement of our existence as a state a law was enacted the very same in principle as that under consideration, although in some respects far more stringent and exacting in its provisions, and that it remained upon the statute books for the period of two years or thereabouts, without, so far as we know, its constitutionality being in any manner brought in question. It will be found in chapter 29, of the R. S. of 1849, the first systematic code of laws enacted by the state after its admission into the Union.

*By the Court.*— Motion to quash denied.