FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, v. GAST, Respondent.

*September 4—October 2, 1962.*

For the appellant there was a brief by *Benton, Bosser, Fulton, Menn & Nehs,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *David L. Fulton* and *John B. Menn.*

For the respondent there was a brief by *Burns & Lubinski* of Seymour, and oral argument by *Michael Burns.*

Briefs *amici curiae* were filed by *Paul E. Jorgensen* of Racine, attorney, and *Ray T. McCann* of Milwaukee of counsel, for the Tavern League of Wisconsin; by *Irving D. Gaines,* general counsel for the Wisconsin State Hotel Association, and *Phillip J. Fox,* general counsel for the Wisconsin Restaurant Association, attorneys, and *Robert F. Kirst* of counsel, all of Milwaukee; and by *E. J. Stats* of Milwaukee, for the State Brewers Association.

CURRIE, J. Defendant's brief states the issue on this appeal to be: Is a tavernkeeper who, in violation of law, sells fermented malt beverages to a seventeen-year-old minor liable to third persons injured by reason of such minor's resulting intoxication? Nevertheless, we deem the allegations of the complaint sufficient to raise the further issue of whether defendant is liable on principles of common-law negligence independent of his violation of a criminal statute. Therefore, after resolving the first issue we shall consider the second.

### *Liability Grounded Upon Violation of a Criminal Statute.*

The criminal statute which defendant violated in selling fermented malt beverages to seventeen-year-old Donald Kahler is sec. 66.054 (9) (b), Stats. 1957. This statute provides:

"No fermented malt beverages shall be sold, dispensed, given away, or furnished to any person under the age of eighteen years unless accompanied by parent or guardian."

Plaintiff's theory of its cause of action is that defendant's violation of this statute constituted negligence *per se* and rendered him liable to anyone sustaining damage as a result of this violation.

The general rule adopted by this court is that violation of a criminal statute constitutes negligence *per se*. *McAleavy v. Lowe* (1951), 259 Wis. 463, 475, 476, 49 N. W. (2d) 487. In that case, however, we noted that there are exceptions to this rule. One such exception might arise if a driver swerved to the wrong side of a highway to avoid a collision with an object in his lane of travel. In *Reque v. Milwaukee & S. T. Corp.* (1959), 7 Wis. (2d) 111, 114b, 95 N. W. (2d) 752, 97 N. W. (2d) 182, we recognized still another exception to the rule of negligence *per se* where a statute had been violated. In that case, the statute violated had been enacted to protect against hazards other than that which gave rise to the harm. We cited therein the Restatement, Torts (2d), Tentative Draft No. 4, p. 48, sec. 288, which sets forth, among other exceptions, the closely analogous case in which a statute has been enacted to protect an interest other than the one invaded by its violation.

We are satisfied that sec. 66.054 (9) (b), Stats., was enacted to protect the safety of persons who might be injured as a result of the intoxication of minors as well as the health and morals of minors under eighteen years of age.[1] Since we have concluded that one of the objectives of this statute is public safety, the general rule, rather than any of its exceptions, would be applicable and the violator of this statute would ordinarily be negligent *per se*. In such a situation, where the legislature enacts a criminal statute and is silent about the civil liability, if any, which attaches

[1] See *Maier v. Racine County* (1957), 1 Wis. (2d) 384, 386, 84 N. W. (2d) 76, *State v. Graves* (1950), 257 Wis. 31, 34, 42 N. W. (2d) 153, *State ex rel. Martin v. Barrett* (1946), 248 Wis. 621, 22 N. W. (2d) 663, *State ex rel. Torres v. Krawczak* (1935), 217 Wis. 593, 259 N. W. 607, and the legislative declarations in secs. 66.054 (16) (a) and 176.44, Stats.

to its violation, the courts are free to determine under common-law principles whether the violator is civilly liable for damages to one injured by the violation. It would be extremely difficult, after imposing liability, under the negligence *per se* doctrine (in *McAleavy v. Lowe, supra*), upon the violator of a statute prohibiting the sale of adulterated pig food, to relieve from liability one who sold intoxicating beverages to a minor in violation of a statute making it a criminal offense to do so.

Nevertheless, where the legislature, in addition to enacting a criminal statute, legislates further and makes the violator of the statute civilly liable in certain situations, the question arises, Has the legislature pre-empted the field of civil liability? This brings us to defendant's contention that the legislature has pre-empted the field of civil liability in the case of a tavernkeeper, such as defendant, who has violated sec. 66.054 (9) (b), Stats. Defendant points out (1) that over the years the legislature had provided for civil liability of vendors of intoxicating liquors, and (2) that the exclusive civil remedy for breach of any of the criminal laws regulating sales of liquor is sec. 176.35 [2] adopted in 1934.

[2] Sec. 176.35, Stats., provides: "Any person or persons who shall be injured in person, property, or means of support by, or in consequence of, the intoxication of any minor or habitual drunkard shall have a right of action jointly or severally in his, her, or their name against any person or persons who have been notified or requested in writing, by the officers authorized by law to forbid the sale or giving away of intoxicating liquors to such minor or habitual drunkard, or by the husband, wife, parents, relatives, guardian, or persons having the care or custody of such minor or habitual drunkard, not to sell or give intoxicating liquors to him, and who, notwithstanding such notice or request, shall knowingly sell or give away intoxicating liquors, thereby causing the intoxication of such minor or drunkard; and the person so selling or giving away such liquors or drinks shall be liable for all damages resulting therefrom. A married woman shall have the same right to bring such suit and to control the same as a *feme sole,* and all damages so recovered shall belong to her and her separate property."

We interpret the action of the legislature in enacting sec. 176.35, which requires notice to be given not to sell or give an intoxicating liquor to a minor in violation of statute as a condition to imposing civil liability, as a clear expression of legislative intent that, absent giving of notice, no civil liability is to result from the violation. This is true even though the remedy provided is not coextensive with the wrong declared by criminal statutes such as sec. 66.054 (9) (b). Courts in other jurisdictions have found legislative pre-emption of the field of civil liability for sales of intoxicating beverages in violation of criminal statutes even though the remedy provided is not coextensive with the wrong declared. Thus plaintiffs' causes of action grounded on such violations were held, in the following cases, to be without the provisions of the civil-liability statutes involved: *Noonan v. Galick* (1955), 19 Conn. Supp. 308, 112 Atl. (2d) 892; *Randall v. Village of Excelsior* (1960), 258 Minn. 81, 103 N. W. (2d) 131; *Strand v. Village of Watson* (1955), 245 Minn. 414, 72 N. W. (2d) 609; *Cavin v. Smith* (1949), 228 Minn. 322, 37 N. W. (2d) 368; *Howlett v. Doglio* (1949), 402 Ill. 311, 83 N. E. (2d) 708; and *Hyba v. C. A. Horneman, Inc.* (1939), 302 Ill. App. 143, 23 N. E. (2d) 564. The federal court, however, in *Waynick v. Chicago's Last Department Store* (7th Cir. 1959), 269 Fed. (2d) 322, 77 A. L. R. (2d) 1260, certiorari denied, 362 U. S. 903, 80 Sup. Ct. 611, 4 L. Ed. (2d) 554, found no pre-emption under the Illinois dramshop statute because the accident, in which plaintiffs were injured, occurred in Michigan and not Illinois where the unlawful sales of intoxicating liquor took place. See also *Schelin v. Goldberg* (1958), 188 Pa. Super. 341, 146 Atl. (2d) 648, leave to appeal denied by the Pennsylvania supreme court February 27, 1959, where the accident occurred after repeal of Pennsylvania's dramshop statute.

It is conceded that plaintiff cannot ground its cause of action upon the civil-damage act, sec. 176.35, Stats., because (1) the beer sold Donald was not an "intoxicating liquor" as defined in sec. 176.01 (2),[3] and (2) defendant was not given notice not to sell or give intoxicating liquors to Donald. We have deemed it advisable to set forth, as an appendix to this opinion, a history of the legislation imposing civil liability from territorial days down to the present time. Included therein are some of this court's interpretations of the various statutes. This legislative history further supports the view that the legislature has pre-empted the field of civil liability resulting from illegal sales of intoxicating beverages including beer.

The following question may arise: Why does the court find legislative pre-emption in the instant case when it did not so find in *Holytz v. Milwaukee, ante,* p. 26, 115 N. W. (2d) 618. In that case, wherein the doctrine of immunity of municipal corporations for tort liability was abolished, the legislature had subjected municipal corporations to liability for negligence in the construction, repair, and maintenance of public buildings, and in the operation of municipally owned or operated motor vehicles. Secs. 101.06 and 345.05, Stats. Limited liability also had been imposed upon municipalities for damages due to defective streets or sidewalks. Sec. 81.15. Nevertheless, this court in *Holytz* found no legislative pre-emption preventing it from abolishing the doctrine of municipal immunity for tort liability.[4] The distinction between the situation presented in *Holytz* and

[3] It should be noted that a fermented malt beverage containing more than five percent of alcohol by weight is an "intoxicating liquor" as defined in sec. 176.01 (2).

[4] The court was careful to point out, however, that the legislature had the power to impose limits upon the amount recoverable in tort actions against municipalities as provided in sec. 81.15, Stats. *Holytz v. Milwaukee, supra,* at page 40.

that of the instant case is as follows: In the former we were dealing with a court-made rule whereas here we are concerned with the extent to which a legislative prohibition in the criminal law gives rise to civil liability. Again, we do not deem it appropriate that we resort to a common-law principle, namely, the doctrine of negligence *per se,* where the legislature has provided a civil remedy for the wrong declared. Therefore, we conclude that plaintiff cannot ground its right to recover upon defendant's violation of sec. 66.054 (9) (b) because of the legislative pre-emption of the field of civil liability in enacting sec. 176.35.

*Liability Under Principles of Common-Law Negligence.*

The complaint alleges that defendant sold intoxicating beverages to the minor Donald Kahler "in such an amount that defendant and his servants, because of said minor's age and apparent condition, knew or should have known would affect his physical and mental condition so as to make him unfit and incompetent to safely and reasonably operate the motor vehicle intrusted to him by his father." We deem that this allegation, liberally construed, is sufficient to charge defendant with common-law negligence independent of his violation of a criminal statute.

The general rule is that a vendor of intoxicating liquor is not, at common law, answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the vendee. Annos. 130 A. L. R. 357, and 75 A. L. R. (2d) 833, and cases cited therein. Wisconsin in two cases has adhered to the common-law rule. *Demge v. Feierstein* (1936), 222 Wis. 199, 268 N. W. 210, and *Seibel v. Leach* (1939), 233 Wis. 66, 288 N. W. 774. However, in *Seibel* this court stated the rule in these words (p. 67), "Under the common law it is not an action-

able wrong either to sell or to give intoxicating liquors to an able-bodied man." Thus it left open the question of whether the rule is applicable where the sale is to a seventeen-year-old minor as in the instant case. Decisions from other jurisdictions, however, indicate that the general, common-law rule of nonliability is applicable regardless of the vendee's lack of majority. *Collier v. Stamatis* (1945), 63 Ariz. 285, 162 Pac. (2d) 125 (minor fifteen years of age); *Fleckner v. Dionne* (1949), 94 Cal. App. (2d) 246, 210 Pac. (2d) 530 (minor of sufficient age to operate an automobile); *State v. Hatfield* (1951), 197 Md. 249, 78 Atl. (2d) 754 (minor of sufficient age to operate automobile); and *Randall v. Village of Excelsior, supra* (minor eighteen years of age).

Nevertheless, the recent case of *Rappaport v. Nichols* (1959), 31 N. J. 188, 156 Atl. (2d) 1, 75 A. L. R. (2d) 821, provides strong support for the position that the aforequoted allegation of plaintiff's complaint states a cause of action in common-law negligence. The complaint in *Rappaport* alleged that defendant tavern operators "wrongfully and negligently sold and served alcoholic beverages" to an eighteen-year-old boy; that the boy was rendered "under the influence of alcoholic beverages and unfit and incompetent to safely and reasonably operate" the motor vehicle intrusted to him by his mother; and that while in this condition he operated the vehicle so as to collide with one driven by plaintiff's husband, killing the latter. The issue before the New Jersey court was the legal sufficiency of the complaint since the trial court had dismissed it for failure to state a cause of action. In its opinion the court pointed out that New Jersey had a criminal statute which made it unlawful to sell alcoholic beverages to minors or intoxicated persons, and stated (31 N. J. p. 202):

"If the patron is a minor or is intoxicated when served, the tavernkeeper's sale to him is unlawful; and if the circumstances are such that the tavernkeeper knows or should know that the patron is a minor or is intoxicated, his service to him may also constitute common-law negligence."

The New Jersey court held that the complaint did state a cause of action and remanded the case for trial.

Defendant's brief in the instant appeal attacks the rationale of the common-law rule, namely, that even if the vendor is negligent, the vendee's voluntary consumption of the intoxicating beverage breaks the causal link between the negligent sale and the resulting intoxication. This rationale has been attacked as fallacious in *Rappaport v. Nichols, supra,* and in the dissent in *Fleckner v. Dionne, supra.* See also Professor Richard V. Campbell's comment on *Seibel v. Leach, supra,* in 1941 Wisconsin Law Review, 116, 117.

Nevertheless, to hold that plaintiff's complaint states a cause of action in common-law negligence independent of defendant's violation of sec. 66.054 (9) (b), Stats., would require that this court overrule *Demge v. Feierstein, supra,* and *Seibel v. Leach, supra.* We do not deem this a proper case in which to so do. Plaintiff stands in the shoes of Donald Kahler, the purchaser and consumer of the alcoholic beverage, and not of Linda Van Dyke, the injured person. *United States Guarantee Co. v. Liberty Mut. Ins. Co.* (1943), 244 Wis. 317, 322, 12 N. W. (2d) 59, 150 A. L. R. 632. Under these circumstances we fail to find compelling, equitable considerations in plaintiff's favor which require this court to consider the advisability of abandoning a common-law rule of long standing both in this state and in most other states. Therefore, plaintiff has no cause of action against defendant for either complete indemnification or contribution.

*By the Court.*—Order affirmed.

## APPENDIX.

### *Civil Damage Statutes.*

#### 1839.

The first regulation of sales of liquor to minors appeared in "AN ACT regulating taverns and groceries," Territory of Wisconsin, Stats. 1839 (beginning at page 123). Sec. 8 thereof provided:

"No tavernkeeper or grocer . . . shall sell any spirituous liquors, or wines, to any minor . . . under the age of eighteen years, without the consent of the father, mother, or guardian of such minor, . . . Whosoever shall offend against either of the provisions of this section, shall forfeit and pay for each and every offense, twenty dollars, to and for the use of, and to be sued for in the name of such father, mother, or guardian of such minor . . . to be recovered by action of debt, before any court having jurisdiction of the same."

The license of an offending seller could be revoked under sec. 10.

#### 1849.

Ch. 29, "Of the Sale of Spirituous Liquors," R. S. 1849, provided for the bonding of sellers in sec. 1, "conditioned to pay all damages that community or individuals may sustain, by reason of such traffic; to support all paupers, widows, and orphans; pay the expenses of all civil and criminal prosecutions made, growing out of, or justly attributable to such traffic." Sec. 4 provided explicitly for a suit by a married woman on the tavernkeeper's bond for injuries sustained by herself or her children "on account of such traffic." Sec. 6 provided:

"On the trial of any suit under the provisions of this chapter, the cause or foundation of which shall be the act

of an individual under the influence of liquor, it shall only be necessary in order to sustain the action, to prove that the principal in the bond sold or gave liquor to the person so intoxicated, or in liquor, whose acts are complained of, on that day previous to the commission of the offense."

Sec. 7 authorized the "proper authorities" to bring a suit, whenever a person became a public charge by reason of intemperance, on the bond of any person "in the habit of selling" liquor to such person becoming a public charge.[1]

## 1858.

Ch. 162, Laws of 1851, "AN ACT licensing the sale of intoxicating liquors," provided for the repeal of prior statutes pertaining to intoxicating liquors. It appeared in substantially the same form, seven years later, in ch. 35, "Of Excise," R. S. 1858. The new act regulated sellers of intoxicating liquors by means of licensing and bonding provisions. Secs. 10 and 12 provided that certain public officials could bring suit against one selling liquor to a drunkard or spendthrift, provided written notice had first been given to the offending seller.

[1] As the court remarked in dicta in *State ex rel. Henshall v. Ludington* (1873), 33 Wis. 107, 119:

"It is a circumstance not perhaps unworthy of observation here, that almost at the commencement of our existence as a state a law was enacted the very same in principle as that under consideration, although in some respects far-more stringent and exacting in its provisions, and that it remained upon the statute books for the period of two years or thereabouts, without, so far as we know, its constitutionality being in any manner brought in question. It will be found in chapter 29 of the R. S. of 1849, the first systematic code of laws enacted by the state after its admission into the Union."

Ch. 29, R. S. 1849, was repealed by ch. 139, Laws of 1850. However, secs. 1, 4, 6, and 7 of the amendment substantially restated the 1849 sections bearing the same numbers. Ch. 162, Laws of 1851, provided in sec. 17 for the repeal of ch. 29, R. S. 1849, and amendments thereto.

## 1871.

Ch. 35, "Of Excise," sec. 10, Stats. 1871, again provided that certain officers could give written notice to tavern-keepers to stop selling spirituous liquors to spendthrifts and drunkards. Sec. 22 made it a misdemeanor to sell spirituous liquors or *malt liquors* to minors. This section had been first created by ch. 36, sec. 1, Laws of 1866, entitled, "AN ACT to prevent minors from playing at billiards and on bowling alleys, and indulging in intoxicating drinks." The words, "malt liquors," were first added by ch. 128, sec. 1, Laws of 1867. The further amendment of ch. 128, sec. 1, Laws of 1867, by ch. 15, sec. 1, Laws of 1871, is irrelevant to the instant appeal.

## 1872.

Ch. 127, Laws of 1872, popularly known as the "Graham Law," was again labeled, "AN ACT to provide against the evils resulting from the sale of intoxicating liquors." The entire chapter uses the phrase "intoxicating liquors" in place of, (1) the phrase "ardent, spirituous, or intoxicating liquors or drinks of any kind" in ch. 35, sec. 10, Stats. 1871, authorizing public authorities to notify tavernkeepers in writing to refrain from selling such liquors to spendthrifts or drunkards; and (2) the phrase "strong, spirituous or malt liquors" in ch. 35, sec. 22, Stats. 1871, making it a misdemeanor to sell same to minors. Ch. 127, sec. 10, Laws of 1872, provided:

"Nothing in this act shall be construed as repealing any of the provisions of the excise law of this state, now in force, or of the law prohibiting the sale of intoxicating liquors to minors."

Sec. 5, one of two civil-damage statutes in the Graham Law of 1872, provided:

"Every person who shall, by the sale or giving away of intoxicating liquors with or without a license, cause the intoxication of any other person, shall be liable for and compelled to pay a reasonable compensation to any city, town, or village, or to any person who may take charge of and provide for such intoxicated person, and two dollars per day in addition thereto for every day such intoxicated person shall be kept, in consequence of such intoxication, which sum may be recovered before any court having competent jurisdiction."

Sec. 6, which was a forerunner of the present civil-damage act, provided in part:

"Every husband, wife, child, parent, guardian, employer, or other person who shall be injured in person or property or means of support, by any intoxicated person, or in consequence of the intoxication of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving away intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons, and any person who shall have caused such intoxication, as aforesaid, shall be liable for all damages sustained, and for exemplary damages." [2]

Cases soon arose invoking these broad statutory remedies. In *Wightman v. Devere* (1873), 33 Wis. 570, defendant,

---

[2] Sec. 6 of the Graham Law of 1872 imposed no written-notice requirement in contrast to sec. 10 of that same law, which, in preserving prior consistent law, incorporated by reference the written-notice requirement imposed upon public authorities by ch. 35, sec. 10, Stats. 1871. Another civil-damage provision appeared in sec. 1 of the Graham Law of 1872 which provided for licensing and bonding of sellers of intoxicating liquors and concluded by stating,

"and such bond may be sued or recovered upon for the use of any person or persons, or their legal representatives, who may be injured by reason of the selling or giving away of intoxicating liquors by the person or his agent so obtaining the license."

who had sold liquors to the husband of plaintiff, appealed a judgment in her favor for $50 in a suit brought under secs. 5 and 6 of the Graham Law of 1872. The court affirmed the trial court's decision and held that plaintiff wife could recover under both sections. The court noted that sec. 5 provided that the person causing the intoxication was liable for a reasonable compensation, with the addition of two dollars per day while extra care was rendered necessary. Moreover, defendant could be compelled to pay same to *any person,* "words broad enough surely to include wife or husband, parent, or child. . . ." (p. 578.) In sustaining the wife's right of action under sec. 6, the court construed the phrase "means of support" therein to relate "to whatever the husband might have earned or made by his labor and attention to business, and contributed to the support of his family." (p. 579.) In *Peterson v. Knoble* (1874), 35 Wis. 80, another action under the Graham Law of 1872, a wife sued a bartender at whose tavern her husband had become intoxicated and allegedly caused injury to her "person, property, and means of support." On trial, plaintiff wife merely proved that upon his arrival home, the intoxicated husband had used threatening language, and frightened and compelled her to go out of doors and leave her home for three or four hours until he sobered up and she found it safe to return. The court upheld the verdict for plaintiff in the amount of $50.

---

The court, in *State ex rel. Henshall v. Ludington* (1873), 33 Wis. 107, held that secs. 1 and 6 were to be construed together. Sec. 1 was changed by ch. 179, sec. 4, Laws of 1874, to provide for an action upon the licensee's bond brought in the name of the state of Wisconsin,

"and judgment shall be entered against the principal and sureties therein named for the full penalty thereof, and execution may issue thereupon by order of the court therefor, to satisfy any judgment which may have been recovered against the principal named in said bond by reason of any breach in the conditions thereof, or for any penalties or forfeitures incurred under this act."

## 1874.

The flow of cases brought under the Graham Act of 1872 was stopped by ch. 179, Laws of 1874, which was entitled, "AN ACT to consolidate and codify the various laws of our state relating to excise and the sale of intoxicating liquors." [3] Sec. 5 of the 1872 law was repealed. Ch. 179, sec. 16, Laws of 1874, amended sec. 6 of the 1872 law by striking out the provision for exemplary damages and requiring (1) that written notice be given the offending seller and (2) that he knowingly disregard same as preconditions to recovery. The new civil-damage act, sec. 16, provided in part:

"Any person or persons, who shall be injured in person, property, or means of support by or in consequence of the intoxication of any minor or habitual drunkard, shall have a right of action severally or jointly in his, her, or their name against any person or persons who have been notified or requested in writing by the authorities designated in section 10 of this act, the husband, wife, parents, relatives, guardians, or persons having the care or custody of such minor or habitual drunkard, not to part with liquor or other intoxicating drinks to them, and who, notwithstanding such notice and request, or shall knowingly sell or give away intoxicating liquors, thereby causing the intoxication of such minor or drunkard, and shall be liable for all damages resulting therefrom."

Moreover, sec. 4 of the codification of 1874 for the first time conditioned the bond of the tavernkeeper upon his not selling intoxicating liquor to minors. Sec. 14 made such an illegal sale grounds for license revocation. The new written-

[3] Said the court of the Graham Law of 1872 in *Crist v. Kiltz* (1939), 232 Wis. 567, 569, 570, 288 N. W. 175, 124 A. L. R. 1517:

"This drastic statute, however, had short shrift. It was amended two years later by sec. 16, ch. 179, Laws of 1874. . . . No cases appear to have come before this court under the statute since the amendment of 1874."

notice requirement of sec. 16 now existed alongside the same requirement, re-enacted in sec. 10, which had formerly applied to public officials alone. Sec. 22 repealed all prior law except for one section not pertinent to this appeal.

### 1878–1919.

This recodification of the civil-damage act with its written-notice requirement was more clearly stated as enacted in sec. 1560, ch. 66, R. S. 1878.[4] Ch. 322, sec. 8, Laws of 1882, made minor amendments in wording. The same statute in substance appeared as sec. 1560, Stats. 1889.[5] During this period, the section prohibiting sales of "any strong, spirituous, or malt liquors" to minors was numbered sec. 1557. Thus it is not clear whether or not the phrase "intoxicating liquor" used in the civil-damage act from 1874 to 1919 was intended to include malt beverages or beer. Sec. 1557 and sec. 1560 continued down to 1919 when ch. 66 of the statutes, which included both sections, was suspended due to the Eighteenth amendment to the United States constitution. Ch. 556, Laws of 1919. These two sections were repealed by ch. 441, sec. 6, Laws of 1921.

### 1933–1958.

The Eighteenth amendment was ratified on January 29, 1919, and was implemented by the Volstead Act of October

---

[4] Ch. 66, sec. 1560, Stats. 1878, provided in part:

"Any person . . . shall have a right of action severally or jointly, in his . . . name, against any person or persons who have been notified or requested in writing by the authorities designated in section . . . [number omitted], or by the husband."

[5] Ch. 66, sec. 1560, Sanborn & Berryman's Anno. Stats. 1889, provided in part:

"Any person . . . shall have a right of action jointly or severally in his . . . name against any person or persons who have been notified or requested in writing by the officers authorized by law . . . and the person so selling or giving away such liquors or drinks shall be liable for all damages resulting therefrom."

28, 1919, ch. 85, 41 U. S. Stat. at L., p. 305. This act defined "beer, wine, or other intoxicating malt or vinous liquors" as any beverage containing more than one half of one percent of alcohol by volume. On February 20, 1933, the congress proposed repeal of the Eighteenth amendment to the states [6] by submitting the Twenty-First amendment for ratification. While the states were ratifying the Twenty-First amendment, the congress amended the Volstead Act to permit the manufacture and sale of beer, wine, and similar fermented malt or vinous liquor containing not more than 3.2 percent alcohol by weight. Ch. 4, 48 U. S. Stat. at L., p. 16, March 22, 1933. This amendment was to become effective fifteen days after enactment. Meanwhile, the Wisconsin legislature worked to enact a state beer law before April 7, 1933. The new beer law, including a section prohibiting the sale of fermented malt beverages to minors under eighteen, unless accompanied by parent or guardian, was not enacted and approved until June 6, 1933. Ch. 207, Laws of 1933. This new beer law was placed in ch. 66 of the statutes.

Meanwhile, the Twenty-First amendment, repealing the Eighteenth amendment, had been ratified by the requisite

[6] Meanwhile in Wisconsin on March 16, 1933, the committee on state and local government proposed Bill No. 278, S., to create ch. 178 of the statutes relating to both malt and spirituous liquors. Included therein was a civil-damage section, sec. 178.17, which provided:

"Every wife, child, parent, guardian, or employer, or other person who shall be injured in person, property, or means of support by any intoxicated person or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action against any person who shall, by selling, bartering, or giving intoxicating liquors have caused the intoxication, for all damages actually sustained as well as for exemplary damages up to an amount of one thousand dollars."

This bill was tabled on July 25, 1933, pursuant to Joint Resolution 138, S., for reasons irrelevant to this appeal.

number of states. It became law on December 5, 1933, and the governor of Wisconsin promptly called the legislature into special session. The legislature enacted ch. 176 of the statutes on February 2, 1934. Ch. 13, Laws of 1933–1934 (special session). Included therein was a civil-damage act, sec. 176.35, Stats.,[7] stated in substantially the same language as had first been used in 1882. This section has remained unchanged since its re-enactment in 1934.[8] At the same special session, the legislature also enacted minor amendments to the new beer law in ch. 66 of the statutes. Chs. 1 and 3, Laws of 1933–1934 (special session).

[7] Bill No. 12, S., which was introduced by Senator Griswold on January 23, 1934, and became ch. 176 of the statutes on February 2, 1934, included a sec. 176.35 or civil-damage act. Bill No. 12, S., was drafted from the printed text of an earlier bill, No. 6, S., which had been introduced by Senator Bolens on January 4, 1934, and which had also included a sec. 176.35 or civil-damage act. Bill No. 6, S., however, had been drafted from the printed text of an earlier bill, No. 1, S., which had been introduced by the interim committee on the control and sale of liquor on December 12, 1933, and which had not included a civil-damage act. The legislative reference library's folder No. 363 shows that the draft of Bill No. 6, S., was completed on the same day it was requested using the text of Bill No. 1, S. No notes appear in the folder explaining the addition of the civil-damage act.

[8] On April 14, 1949, the committee on judiciary, by request of the district attorneys association, introduced Bill No. 596, S., to create ch. 176, "Beer and Intoxicating Liquors." Sec. 176.71 thereof, a civil-damage act, would have ended the written-notice requirement with regard to sales to minors. It read in part:

"Any person . . . shall have a right to action . . . against any person who has sold to such minor or who having been notified in writing . . . not to sell or give beer or liquor to him [an habitual drunkard], has notwithstanding such notice or request knowingly sold or given away beer or liquor to such drunkard; and the person selling or giving away such liquor or beer shall be liable for all damages resulting therefrom."

This bill was indefinitely postponed on July 9, 1949.