Leslie KOBACK, David Koback and Susan Koback, Plaintiffs-Appellants,

v.

Michael A. CROOK, American Standard Insurance Company of Wisconsin, Mr. and Mrs. Richard Crook, Jr., ABC Insurance Company, a fictitious name of an unknown insurance corporation, and General Casualty Company of Wisconsin, Defendants,

Paul BROOKS, Mr. and Mrs. Cecil Brooks and Threshermen's Mutual Insurance Company, Defendants-Respondents.

Supreme Court

No. 84–1080. Argued October 30, 1984.—
Decided April 30, 1985.

(Also reported in 366 N.W.2d 857.)

For the plaintiffs-appellants there were briefs by *Thomas W. St. John, Madeleine E. Kelly* and *Friebert, Finerty & St. John, Milwaukee,* and oral argument by *Ms. Kelly.*

For the defendants-respondents there were briefs by *Todd A. Becker* and *Coyne & Niess Law Office,* Madison, and *David J. Colwin* and *Colwin, Fortune, Colwin & Pomeroy, S.C.,* Fond du Lac, and oral argument by *Mr. Becker* and *David J. Colwin.*

HEFFERNAN, CHIEF JUSTICE. The question presented is whether a third party, Leslie Koback, injured by an intoxicated driver, Michael Crook, has a common law cause of action for negligence against Mr. and Mrs. Cecil Brooks and their adult son, Paul Brooks, the social hosts, who served alcohol to a minor, Michael Crook,

when the hosts knew, or should have known, that Crook was a minor and knew, or should have known, that the minor guest would drive, and when the minor's consumption of alcohol was a cause of the injury to the third party.

We conclude that the circuit court erred when it concluded that the complaint failed to state a claim upon which relief can be granted. Accordingly, we reverse and remand to the circuit court for further proceedings.

The case comes to us on appeal from the circuit court for Dodge county, Henry G. Gergen, Jr., circuit judge, on a petition by Leslie Koback and her parents, the plaintiffs-appellants, to bypass the court of appeals pursuant to sec. 809.60, Stats.

In the circuit court, Judge Gergen, in response to a motion to dismiss, relying upon Wisconsin decisional law as it then existed, held, in a decision dated April 18, 1984, that no cause of action, *i.e.*, no claim for which relief could be granted, existed under the facts alleged, in Wisconsin. He concluded that a social host could not be liable for negligently serving intoxicating beverages to a guest under the facts stated in the complaint.[1] Judgment of dismissal was entered on May 1, 1984. Appeal

[1] Judge Gergen relied upon the court's decisions in *Garcia v. Hargrove*, 46 Wis. 2d 724, 176 N.W.2d 566 (1970), and *Olsen v. Copeland*, 90 Wis. 2d 483, 280 N.W.2d 178 (1979), both of which were subsequently overruled in *Sorensen v. Jarvis*, 119 Wis. 2d 627, 350 N.W.2d 108 (1984).

A motion for summary judgment was also brought by the defendants-respondents. The affidavits and underlying depositions upon which the motion for summary judgment was based, although physically in the record, are not before us, because Judge Gergen, having found no claim to be stated, did not have reason to decide the motion for summary judgment. Thus, any information that appears in the summary judgment documents is not before us. We base our decision solely on the allegations of the complaint.

was brought by Leslie Koback and her parents, David and Susan Koback.[2]

The amended complaint alleges that, on June 16, 1982, Leslie Koback, a young woman of seventeen, attended a high school graduation party at the home of Mr. and Mrs. Cecil Brooks and their son, Paul Brooks. Paul was an eighteen-year-old adult at the time. Michael Crook, seventeen, was also a guest at the party. The Kobacks, the plaintiffs, allege that:

"Mr. and Mrs. Cecil Brooks and Paul Brooks furnished beer to the minor guests at the party at their home . . . and they knew or should have known that beer and/or other alcoholic beverages would be consumed by the minor guests at the party."

It was also alleged that Michael Crook drank alcoholic beverages and became intoxicated. The plaintiffs allege that:

"[The Brooks] knew or should have known that minors, or some of them, would leave the premises by automobile or motorcycle, thereby creating an unreasonable risk of harm to those minors operating the vehicles and their passengers."

They allege that the Brooks knew that Michael Crook was a minor, knew that he had driven his motorcycle to the party, and knew of his intention to leave the party with Leslie Koback as a passenger on his motorcycle.

It is also alleged that, at approximately 10:30 p.m., Michael Crook, in an intoxicated condition, left the party on his motorcycle with Leslie Koback as a passenger. Shortly thereafter, Michael's motorcycle struck a parked car, throwing Leslie to the pavement, causing very severe personal injuries, compensation for which is sought in this lawsuit.

---

[2] Defendants Michael Crook, the driver, and his parents and their insurers were previously dismissed, apparently as a result of settlement.

The essence of the plaintiffs' cause of action appears in the amended complaint:

"Mr. and Mrs. Cecil Brooks and Paul Brooks were negligent in the following respects:

" (a) in causing and permitting intoxicating beverages to be served to Michael Crook and the other minors at the party;

" (b) in permitting Michael Crook to leave the party with Leslie Koback, when they knew or should have known that he had consumed intoxicating beverages and it was his intention to operate his motorcycle with Leslie Koback as his passenger;

" (c) in failing to ascertain and to warn Leslie Koback of the intoxicated condition of Michael Crook;

" (d) in failing to properly supervise the party so as to have prevented minors from consuming alcoholic beverages and so as to have prevented guests at the party from being transported by persons with whom it would be unsafe to ride;

" (e) in failing to provide a safe means of transportation from the party when they knew or, in the exercise of reasonable care should have known, that such transportation was necessary."

It was alleged that such negligence was a "substantial factor in producing Leslie Koback's injuries and the damages to her and her parents."

The question thus presented on this appeal is whether the facts alleged, if true—and on a motion to dismiss we assume them to be true—state a claim upon which relief can be granted. *Quesenberry v. Milwaukee County*, 106 Wis. 2d 685, 690, 317 N.W.2d 468 (1982). Does a third party, in this case Leslie Koback, have a cause of action or a claim against the three members of the Brooks family who were the hosts of a minor, Michael Crook, at a party where they were negligent in the respects specified in the complaint.

This court has not heretofore been called upon to determine the possible liability of a social host who alleged-

ly negligently serves a minor guest alcoholic beverages which cause conduct by the guest that results in injury.

This court, however, in *Sorensen v. Jarvis*, 119 Wis. 2d 627, 350 N.W.2d 198 (1984), recently abrogated the common law non-liability rule in respect to vendors of alcoholic beverages and held that the vendor may be liable to a third party for negligently furnishing alcohol to a minor when the alcohol so supplied is a substantial factor in causing injuries to a third party. This court did so by expressly rejecting the outdated common-law notion that it was only the consumption of the alcoholic beverages and not the negligent furnishing of them that was the cause of the injury.

Additionally, in *Sorensen,* the court made it clear that it was not precluded from changing the common-law court-made doctrine theretofore shielding the vendor from liability. Moreover, the court held, consistent with previous declarations of this court in tort cases, that the imposition of liability on a vendor whose conduct was a substantial factor in causing the injury was a matter of public policy in the sense that, where there was a proved chain of causation between conduct and result, it was for the court to determine whether or not there should be liability, and that a reasonable view of appropriate public policy compelled this court to abolish the negligent liquor vendors' specious common-law shield from civil liability. Those cases that relied upon this court's former articulation of public policy that protected the vendor from liability were expressly overruled. *Garcia v. Hargrove* (Garcia I), 46 Wis. 2d 724, 176 N.W.2d 566 (1970) ; *Garcia v. Hargrove* (Garcia II), 52 Wis. 2d 289, 190 N.W.2d 181 (1971) ; *Olsen v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979).

In *Sorensen,* liability, although couched in terms of common-law negligence, rested upon the statutory prohibitions against selling to a minor, the violation of which constituted negligence *per se.*

The defendant in *Sorensen* was a vendor, a commercial seller of liquor at retail. Here, the defendants are home-owners—social hosts who, as far as the record shows, gratuitously supplied alcohol to the minors. The plaintiffs in this case urge that this court apply the rationale of *Sorensen* to make it clear that the class of persons against whom a claim may be asserted includes not only negligent vendors of alcohol to minors but negligent social hosts as well. They would predicate this liability, not upon a violation of the liquor laws, but upon common-law negligence.

In *Sorensen,* we rejected the shibboleth that it was the imbiber and not the supplier of the alcohol who caused the injury, but we did not need to go beyond the test of *Farmers Mutual Auto Insurance Co. v. Gast,* 17 Wis. 2d 344, 117 N.W.2d 347 (1962), in concluding that the vendor in *Sorensen* was negligent. The sale in *Sorensen* violated the criminal law. In *Sorensen,* at 645, we said, "The sale to a minor under the formulation of *Gast* is negligence *per se."* Thus, although stating that the negligence of the furnisher of liquor was the predicate upon which liability must lie, we were able to find negligence *per se,* because the licensee violated a statutory prohibition by selling to a minor.

In the instant case, under the plaintiffs' theory, the negligence alleged in the complaint must be proven at trial and, if proved, is the predicate for liability of a non-commercial supplier, a social host, to the same extent that the negligence *per se* conduct of violating a liquor statute triggers liability for a licensee. Plaintiffs assert that the failure to exercise ordinary care in supplying intoxicating beverages is simply common-law negligence that triggers liability if the elements of cause, substantial factor, and proximate cause—together with damages—are proved. We agree that the *Sorensen* rationale is appropriately applied to the non-commercial vendor, the negligent social host, and may furnish a

basis for liability. We need not go beyond *Sorensen*, however, for here, as in *Sorensen*, it is negligence *per se* to furnish liquor to a minor.[3]

The statutory prohibitions against selling to minors, upon which negligence *per se* was founded in *Sorensen*, also apply in respect to the furnishing of fermented malt beverages and intoxicating liquors to a minor.

Sec. 66.054(20), Stats. 1979–80, and sec. 176.30, Stats. 1979–80, which were in effect at the time of the incident considered in this case, provide penalties for their violation.

Sec. 66.054(20)(a), Stats. 1979–80, provides: "Except as otherwise provided in this section, no person may sell or *furnish* fermented malt beverages to a minor . . . ." (Emphasis supplied.)

In respect to intoxicating liquors, sec. 176.30(2)(a), Stats. 1979–80, provides: "No person may: 1. Sell, *furnish* or *give* intoxicating liquor to a person under age 18." (Emphasis supplied.)

We take judicial notice of these statutes and, as in *Sorensen, supra,* we conclude that proof of the violation of either statute constitutes negligence *per se*. The allegations of the complaint specifically assert that fermented malt beverages were furnished by the Brooks' to Michael Crook. The complaint also alleges that the Brooks' caused and permitted alcoholic beverages to be served to Michael Crook. Under the rationale of *Sorensen,* these allegations, if proved, constitute negligence

---

[3] At the time of the events leading to liability in this case, the age of majority and the legal drinking age were both eighteen. Sec. 66.054(20)(a), Stats. 1979–80; sec. 176.30(2)(a), Stats. 1979–80; sec. 990.01(20), Stats. 1979–80. Effective July 1, 1984, the legal drinking age became nineteen years of age. Sec. 125.02 (8m), Stats. 1983–84. Reference throughout this opinion to the word, "minor," is synonymous with the phrase, "under the legal drinking age." Our holding abrogates the common law immunity afforded social hosts for serving persons under the legal drinking age, whatever the legal drinking age may be at the time.

*per se.* The fact that these statutes apply with particularity to vendors of the controlled beverages, by virtue of the statutes' placement among the licensing regulations, does not restrict their prohibitions to licensed persons only. They apply to all who furnish liquor or fermented malt beverages to minors.

*Sorensen* relied upon the rationale of the dissenting opinion in *Garcia I*, written by Chief Justice Hallows and joined by Justices Wilkie and Heffernan, and the dissenting opinion in *Olsen v. Copeland* of Justices Abrahamson and Heffernan, and the separate dissent of Justice Day.

The logic of those dissents was expressly adopted as the *ratio decidendi* of *Sorensen*. We conclude that the rationale adopted in *Sorensen* unmistakably leads to the conclusion that the allegations of the complaint in this case state a claim upon which relief can be granted against a social host who has furnished fermented malt beverages or liquor to a minor in violation of secs 66.054 (20) (a) or 176.30 (2) (a).[4]

In the dissent to *Garcia I*, it was pointed out that to hold a negligent liquor vendor liable comports with the traditional fault principles of tort liability and permits an injured party to recover against one who negligently causes injury. We stated in the *Garcia I* dissent that we would thus remove an arbitrary exception to the nearly universal fault principle of liability.

We conclude that fault principle is equally applicable to the social host who by negligent furnishing of the alcoholic drink causes the injury. While the defendant

---

[4] We have considered the defendants' argument that the imposition of liability on a social host should be undertaken by the legislature and not this court. Consistent with our position in *Sorensen*, we conclude that the question of whether to recognize a common-law cause of action by an injured third party against a social host is an appropriate one for this court. *See Sorensen*, 119 Wis. 2d at 632.

here argues there is a real distinction between social hosts and commercial vendors, we conclude it is a distinction without a legally relevant difference—certainly, no difference in respect to minors. What is negligent conduct in the furnishing of liquor by a seller may be different factually than what is negligence by a social host. Negligence is the want of ordinary care under the circumstances. What is negligence in most cases presents a jury question. In liquor cases that involve minors the statute supplies the standard of what is negligence, the selling or furnishing of alcoholic beverages—although there may be other acts of negligence that could also lead to liability.

The defendants argue, however, that there is a special fiduciary relationship between a licensed liquor dealer and a customer, upon which tort liability may be based, that is absent in the social host and guest relationship. The *Sorensen* case did not rest upon that alleged fiduciary relationship, and we conclude there is none. The legal liabilities of a retail seller set forth in *Sorensen* are the result of negligent conduct in respect to a minor. There is no reason why a different rule of tort law should apply to a social host where liquor or other intoxicants are furnished to a minor guest.

It is also asserted that the social host should not be liable because the host does not have the potential of passing on the costs of his liability as a business expense. It is argued, therefore, that the social host should be liability-free, although defendants acknowledge that a commercial vendor should not be. In the instant case, it was conceded at oral argument that the defendants' homeowners liability policy provided coverage for the kind of claim asserted in this case. In respect to the type of argument made by the defendants here, the New Jersey Supreme Court in *Kelly v. Gwinnell*, 96 N.J. 538, 550 n. 9, 476 A.2d 1219 (1984), pointed out the relevant distinction:

"[T]he critical issue here is not whether the home-owner can pass the cost on or must bear it himself, but whether tort law should be used to spread the risk over a large segment of society through the device of insurance rather than imposing the entire risk on the innocent victim of drunken driving. Obviously there will be some additional insurance premium at some point that homeowners and renters will have to bear. Their inability to pass that cost on to others, however, is no more persuasive than that same argument would be as to the 'average citizen's' automobile liability insurance or, for that matter, for homeowners' insurance as it now exists."

In each case, mechanisms exist to spread the loss over a group—enterprise liability in the case of a commercial venture and insurance in respect to the social situation.

Applying the reasoning of the dissent in *Garcia I,* adopted in *Sorensen,* then, it is apparent that, where a minor is concerned, there is no persuasive reason to distinguish between the negligent social host and the negligent vendor. Neither occupies a status that, viewed in terms of public policy, warrants immunization from liability once negligent conduct has been proved to be a cause of injury.

Moreover, contrary to the defendants' assertion, and consistent with the rationale adopted in *Sorensen,* the negligence of the defendant social host is no more remote from the claimed injury than is the negligence of the vendor. The defendants in the present case acknowledge that the furnishing of alcohol to the minor is a cause of the harm to third parties, but claim the result of the conduct to be too remote to be actionable. We see no distinction in that respect from the situation where a commercial vendor has acted negligently. Moreover, in the exceptional case, where the result is so attenuated both in time and consequences from the original negligence, the usual tort-liability-limiting policy factors could be employed.

"[N]egligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of public policy." *Haas v. Chicago & North Western Ry Co.*, 48 Wis. 2d 321, 326, 79 N.W.2d 885 (1970).[5]

The reason for that technique was explained over thirty years ago in *Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 2d 229, 238, 55 N.W.2d 29 (1952) :

"[I]n cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold . . . there is no liability."

In the dissent to *Garcia I*, Chief Justice Hallows addressed the argument of the *Garcia I* majority that to hold a commercial vendor liable would inexorably lead to holding a negligent social host liable. He agreed that liability might ensue in either case, pointing out that the social host ought to be liable if found negligent. He wrote:

"The majority is concerned with the difficulty of making a distinction of where to draw the line between lia-

---

[5] *Colla v. Mandella*, 1 Wis. 2d 594, 598, 599, 85 N.W.2d 345 (1957), particularizes the considerations that are to be applied to causes of action on an individualized case-by-case basis:

"It is recognized by this and other courts that even where the chain of causation is complete and direct, recovery against the negligent tort-feasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too 'wholly out of proportion to the culpability of the negligent tort-feasor,' or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden upon users of the highway, or be too likely to open the way to fraudulent claims, or would 'enter a field that has no sensible or just stopping point.'"

bility and no liability. After having correctly stated that foreseeability was part of negligence and not causation, the majority opinion suggests it is rather difficult to draw a line between selling liquor and giving liquor to an intoxicated person. In effect, the majority says if it is logical to hold the commercial dispenser liable, then there is no legitimate basis for not also holding the private dispenser liable; and since it is impractical to hold a private dispenser liable, we will not hold either. The necessity of drawing a line of demarcation is a straw-man argument, and I see no reason why such a distinction must be made. . . .

"We are still our brothers keepers, and it would be a rare host at a social gathering who would knowingly give more liquor to an intoxicated friend when he knows his invitee must take care of himself on the highway and will potentially endanger other persons. Social justice and common sense require the social host to see within reason that his guests do not partake too much of his generosity." *Garcia I,* 46 Wis. 2d at 739–40 (Hallows, C.J., dissenting).

In thus adopting in *Sorensen* the rationale of the Hallows dissent in *Garcia I,* this court has made the conscious determination that the same traditional principles of tort law that apply to vendors ought also to apply to social hosts; *i.e.,* if either acts in a manner evincing a lack of ordinary care in the circumstances, liability may follow.

Still another argument of the defendants here was set at rest in *Sorensen.* It is asserted that to place any part of the onus of liability on the host will dilute the responsibility of the drunk driver to the innocent victim. This, of course, has been one of the traditional arguments against any form of liability insurance that makes possible the compensation of the victim from a source other than the assets of the immediate tortfeasor. Again relying upon the language of Chief Justice Hallows' dissent in *Garcia I,* we stated in *Sorensen,* at 643:

"[A] drunk driver will not be relieved of his responsibility—he will remain liable—but that responsibility will be shared with at least one additional culpable party, the negligent tortfeasor who supplied the liquor, when the negligence of each is a substantial factor in causing the plaintiff's injuries."

This statement applies literally and logically to the social host as well as to the commercial vendor. The driver remains a joint tortfeasor and, as such, may be jointly and severally liable.

Nor do we see any reason why holding a social host liable, if negligent, will induce fraudulent claims. Any time the law offers relief from injuries resulting from tortious conduct, some in our society are tempted to make fraudulent claims. Our legal system is designed, however, to guard against, and to minimize, that possibility. The possibility of fraud is no greater in the type of claim we recognize here than in scores of other types of tort claims. The application of the rules of evidence, the oath of witnesses to tell the truth, and the ability of jurors to discern it remain the shield of our society against false claims of any kind.

The rationale of the *Garcia I* dissent, which we have adopted, is simply that a person who negligently furnishes liquor to another, when such furnishing of liquor or other intoxicant is a substantial factor in causing an injury, is not in social justice entitled to immunity from the consequences of such conduct. This rationale as a predicate for liability applies equally to the negligent vendor of liquor to a minor and to the negligent host who serves liquor to a minor guest.

Additionally, in *Sorensen* we adopted the rationale of Justice Day's separate dissent in *Olsen v. Copeland*, 90 Wis. 2d 483, 280 N.W.2d 178 (1979). The theme of his dissent, unanimously accepted by the court in *Sorensen*, was simply that normal principles of tort liability ought

to be applied to the conduct of those who furnish liquor. Quoting *A. E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974), the dissent of Justice Day stated:

> " '. . . . The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . .
> " 'A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs.' " *Olsen,* at 496–97.

Thus, in *Sorensen,* by our express acceptance of the dissenting rationale in *Garcia I* and in *Olsen,* we concluded that the negligent conduct of a supplier of liquor was to be treated in the common law of torts in the same manner as the negligent conduct of any other person. If conduct is of a nature that will foreseeably cause harm to anyone, it is negligent. If the conduct is the violation of a safety statute whose purpose is to avoid or diminish the likelihood of the harm that resulted, the conduct is considered to be negligence *per se.* If that negligence is a substantial factor—a cause in fact—in respect to an injury, liability will follow unless in the particular case, as a matter of policy to be determined by the court, the results are so unusual, remote, or unexpected that, in justice, liability ought not be imposed.

Hence, the negligent supplier of an intoxicant to a minor, under the rules of Wisconsin tort law, may be liable in the same manner and to the same extent as any person who engages in negligent conduct.

We see no fundamental distinction between the basis of liability found to exist in *Sorensen* and the basis for the liability which may exist here if negligence is proved. In *Sorensen,* the negligence was *per se* because of the violation of a specific liquor control regulation. In the instant case, we predicate the negligence upon the analogous statute. The allegations of the complaint, if proved and if shown to the satisfaction of a properly instructed jury to evidence a want of ordinary care in the circumstances, *i.e.,* the serving of liquor to a minor, will result in a proper finding of negligence.

That the liability of the licensed seller and the liability of a social host in respect to a minor are indistinguishable because both stem from negligent conduct was well stated in *Kelly v. Gwinnell,* 96 N.J. 538, 546–47, 476 A.2d 1219 (1984), a case which held a social host liable for negligence in respect to an adult social guest. The New Jersey court stated:

"The Appellate Division . . . ruled in *Linn v. Rand,* 140 N.J. Super. 212 (1976), that a social host who serves liquor to a visibly intoxicated minor, knowing the minor will thereafter drive, may be held liable for the injuries inflicted on a third party as a result of the subsequent drunken driving of the minor. There, practically all of the considerations urged here against liability were present: it was a social setting at someone's home, not at a tavern; the one who provided the liquor to the intoxicated minor was a host, not a licensee; and all of the notions of fault and causation pinning sole responsibility on the drinker were present. The only difference was that the guest was a minor— but whether obviously so or whether known to the host is not disclosed in the opinion.

"In *Rappaport,* we explicitly noted that the matter did not involve any claim against 'persons not engaged in the liquor business.' 31 N.J. at 205. We now approve *Linn* with its extension of this liability to social hosts. In expanding liability, *Linn* followed the rationale of *Rappaport* that the duty involved is a common law duty,

not one arising from the statute and regulation prohibiting sales of liquor to a minor, neither of which applies to a social host. . . . The fair implication of *Rappaport* and *Sorensen,* that the duty exists independent of the statutory prohibition, was thus made explicit in *Linn.* As the court there noted: 'It makes little sense to say that the licensee in *Rappaport* is under a duty to exercise care, but give immunity to a social host who may be guilty of the same wrongful conduct merely because he is unlicensed.' 140 N.J. Super. at 217."

See also *Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity,* 258 Or. 632, 485 P.2d 18 (1971), which held, as a matter of common-law negligence, a social fraternity could be liable in damages for serving liquor to persons who were known to be minors and whose intoxication caused injuries.

We conclude that the allegations of the complaint state a claim upon which relief can be granted, and that such claim is founded upon the Wisconsin common law of negligence as recently stated in *Sorensen v. Jarvis.* The policies that guided the court in *Sorensen* in adopting the rationale of the dissents in *Garcia I* and *Olsen* are fully applicable to the liability in tort of a social host.

One of the defendants' arguments is that to hold a social host liable will in some way destroy the *joie de vivre* and congeniality of numerous social events—would place a damper on the gaiety of weddings, anniversaries, and graduations. In respect to this argument, the New Jersey court had this to say:

"We impose this duty on the host to the third party because we believe that the policy considerations served by its imposition far outweigh those asserted in opposition. While we recognize the concern that our ruling will interfere with accepted standards of social behavior; will intrude on and somewhat diminish the enjoyment, re-

laxation, and camaraderie that accompany social gatherings at which alcohol is served; and that such gatherings and social relationships are not simply tangential benefits of a civilized society but are regarded by many as important, we believe that the added assurance of just compensation to the victims of drunken driving as well as the added deterrent effect of the rule on such driving outweigh the importance of those other values. Indeed, we believe that given society's extreme concern about drunken driving, any change in social behavior resulting from the rule will be regarded ultimately as neutral at the very least, and not as a change for the worse; but that in any event if there be a loss, it is well worth the gain." *Kelly*, 96 N.J. at 548.

We need not dwell on the grim statistics of death or mayhem on the highways to justify our support of this statement of the New Jersey court. We need only to look to the consequences of the alleged negligence by the host in the instant case—a young woman physically, emotionally, and mentally crippled, a consequence that all too often is the result of uncontrolled furnishing of alcoholic beverages, whether at private affairs or in commercial establishments. To have "carefree" social affairs where the host does not exercise care is to invite injury, suffering, and death, and, as a matter of social policy, liability for the consequences.

For the reasons set forth in this opinion, we conclude that the complaint states a claim upon which relief can be granted. We hold that, where there is sufficient proof at trial, a social host who negligently serves or furnishes intoxicating beverages to a minor guest, and the intoxicants so furnished cause the minor to be intoxicated or cause the minor's driving ability to be impaired, shall be liable to third persons in the proportion that the negligence in furnishing the beverage to the minor was a substantial factor in causing the accident or injuries, as

may be determined under the rules of comparative negligence.

In *Sorensen,* this court applied the rule of liability to the immediate parties; but, as to all others, the rule was made prospectively applicable, effective on September 1, 1984. 119 Wis. 2d at 648. This procedure is appropriately utilized in the present case. As the New Jersey Supreme Court stated in *Kelly,* at 551:

"Homeowners who are social hosts may desire to increase their policy limits; apartment dwellers may want to obtain liability insurance of this kind where perhaps they now have none. The imposition of retroactive liability could be considered unexpected and its imposition unfair. We therefore have determined that the liability imposed by this case on social hosts shall be prospective . . . ."

Accordingly, for the reasons stated in *Sorensen,* we apply the holding of this case prospectively. By this, we mean that there shall be liability only for the negligent conduct of a social host who furnishes liquor to a minor when the conduct which causes injury occurs on or after September 1, 1985.

We do, however, apply the rule of liability adopted herein to the parties in the case before us. The judgment dismissing the complaint of the plaintiffs is reversed and the cause is remanded to the circuit court for Dodge county for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.

WILLIAM A. BABLITCH, J. (concurring). The issue decided in this case is the liability of a social host who serves, or allows to have served, intoxicants to minors. I join the opinion of the majority, specifically because it is grounded upon a violation of the statute that makes it illegal to serve intoxicants to minors. I write

separately only to emphasize that an entirely different question, with very different problems of public policy, is involved in the issue of the liability of a social host to an adult. This case does not reach that issue.

I am authorized to state that JUSTICES WILLIAM G. CALLOW and LOUIS J. CECI join in this concurrence.