Alexandria DOERING, Jason Doering, John H. Priebe, Guardian ad Litem for minor plaintiffs, Jason Doering and Troy Doering and Kersten A. Schmelzer, a person under a disability by her general guardian, Attorney Curtis M. Kirkhuff, Plaintiffs-Respondents,†

v.

WEA INSURANCE GROUP and Wisconsin Physicians Service Health Insurance, Nominal Plaintiffs,

v.

Thomas J. STAMPER, Linda J. Stamper, Alias Insurance Company No. 1, and Alias Insurance Company No. 2, Defendants,

Deanne J. VON ARX, d/b/a Alpine Bar & Resort and Scott A. Meland, Defendants-Appellants.

Supreme Court

*No. 93–3386. Oral argument November 30, 1994.—Decided May 31, 1995.*

(On bypass from the court of appeals.)

(Also reported in 532 N.W.2d 432.)

†Motion for reconsideration denied July 18, 1995.

118

119

121

For the defendants-appellants there were briefs (in the Court of Appeals) by *Mark P. Wendorff*, Wausau and oral argument by *Mark P. Wendorff*.

For the plaintiffs-respondents there was a brief (in the Court of Appeals) by *James A. Johnson* and *Johnson, Houlihan, Paulson & Priebe, S.C.*, Rhinelander.

For the plaintiffs-respondents, Kersten A. Schmelzer & Curtis M. Kirkhuff, there was a brief (in the Court of Appeals) by *Curtis M. Kirkhuff* and *Pellino, Rosen, Mowris & Kirkhuff, S.C.*, Madison and oral argument by *Susan Blesener*.

Amicus curiae brief was filed by *David M. Skoglind*, counsel, Milwaukee for the Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *Barry L. Chaet, Katherine L. Williams* and *Beck, Chaet, Loomis, Molony & Bamberger, S.C.*, Milwaukee for the Wisconsin Restaurant Association, The Bowling Proprietors of Wisconsin, Inc. and The Wisconsin Innkeepers Association.

Amicus curiae brief was filed by *Steven C. Brist*, counsel, Madison for The Tavern League of Wisconsin, Inc.

Amicus curiae brief was filed by *W. Barton Chapin* and *Riordan, Crivello, Carlson, Mentkowski & Steeves*, Milwaukee for the Civil Trial Counsel of Wisconsin.

Amicus curiae brief for the Attorney General was filed by *Charles D. Hoornstra*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

SHIRLEY S. ABRAHAMSON, J.   The defendants appeal from an order of the circuit court for Oneida County, Mark A. Mangerson, circuit judge, refusing to grant the defendants' motion to dismiss the complaint. The court of appeals granted the defendants' petition for leave to appeal a nonfinal order. We granted plaintiff Schmelzer's petition to bypass the court of appeals. Section (Rule) 809.60, Stats. 1991–92.

The single issue in this case is whether sec. 125.035, Stats. 1991–92, violates the equal protection clause of either the United States or Wisconsin Constitution.[1] The statute immunizes a person from civil liability arising out of the act of supplying alcohol beverages to another person. At the same time, the statute exposes to civil liability certain persons who provide alcohol beverages to a person under the legal drinking age when that person injures a third party and the alcohol beverages were a substantial factor in causing the injury.[2]

Relevant parts of sec. 125.035, Stats. 1991–92, read as follows:

(2)   A person is immune from civil liability arising out of the act of procuring alcohol beverages

---

[1] In resolving this question, we note that the legal analysis used to test the statute against equal protection guarantees is ordinarily the same under both the state and federal constitutions. *Matter of Care and Maintenance of K.C.,* 142 Wis. 2d 906, 915, 420 N.W.2d 37 (1988); *Funk v. Wollin Silo & Equip. Co., Inc.,* 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244 (1989).

[2] Not every provider of alcohol beverages to an underage person is subject to liability under sec. 125.035(4). Sections 125.035(2) and (4) grant immunity to those providers who, although they have provided alcohol beverages to an underage person, have certain defenses as set forth in sec. 125.035(4)(b).

for or selling, dispensing, or giving away alcohol beverages to another person.

. . .

(4)(a) In this subsection, "provider" means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person

. . ..

(b) Subsection (2) does not apply if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a 3rd party. . . .

The circuit court determined that sec. 125.035 violates equal protection guarantees, even under a rational basis test. We reverse the order of the circuit court and remand the cause to the circuit court with instructions to dismiss the complaint.

I.

Because this case comes before us on a motion to dismiss, we assume the facts presented in the complaint to be true for the purposes of this review. *Ford v. Kenosha County,* 160 Wis. 2d 485, 490, 466 N.W.2d 646 (1991). On September 1, 1992, defendant Thomas J. Stamper drove into an intersection, ignoring a stop sign. Stamper's automobile collided with the automobile in which plaintiffs Alexandria Doering and Kersten Schmelzer were riding. Both plaintiffs suffered devastating injuries as a result of the collision, including irreversible brain damage and permanent physical injuries. No part of their damages has been compensated.

Prior to the incident Stamper, who had attained the legal drinking age, had been drinking alcohol beverages at the defendant Alpine Bar & Resort, owned by defendant Deanne J. Von Arx. Defendant Scott A. Meland, the bartender who served Stamper, and Von Arx knew that Stamper was intoxicated and under the influence of marijuana when Meland served him. Additionally, both these defendants knew that Stamper had driven to the Alpine Bar & Resort and that his driving privileges had previously been revoked. The complaint alleges that when Von Arx and Meland witnessed Stamper leave the bar, both of them knew that Stamper would be driving without a license, while intoxicated and under the influence of marijuana.

Finally, the complaint alleges that defendants Von Arx and Meland were negligent in serving alcohol beverages to Stamper while he was intoxicated, in violation of sec. 125.07, Stats. 1991–92, and that their negligence was a substantial factor in causing the plaintiffs' injuries.

Relying on the civil immunity statute, sec. 125.035, Stats. 1991–92, defendants Von Arx and Meland moved to dismiss the complaint for failure to state a claim on which relief could be granted. The circuit court denied the defendants' motion, ruling that the statute violated equal protection guarantees. To reach this conclusion, the circuit court first determined that the statute creates two separate classifications of persons injured by intoxicated persons. One class of victims—the victims of underage consumers of alcohol beverages—may bring a cause of action against providers of alcohol beverages. A second class of victims—the victims of intoxicated consumers of alcohol beverages who have attained the legal drinking age—are barred from instigating a cause of action against persons sup-

plying alcohol beverages. The circuit court concluded that this distinction was not rationally related to the statutory scheme in Chapter 125. Section 125.07(2)(a)1, Stats. 1991–92, imposes a criminal penalty on those persons who supply alcohol beverages to an intoxicated person,[3] but sec. 125.07(1)(a)1, Stats. 1991–92, assesses only a civil forfeiture on those who provide alcohol beverages to a person who has not attained the legal drinking age.[4] The circuit court rea-

---

[3] Section 125.07(2), Stats. 1991–92, proscribes supplying alcohol beverages to intoxicated persons as follows:

Section 125.07(2)(a) *Restrictions.* 1. No person may procure for, sell, dispense or give away alcohol beverages to a person who is intoxicated.
2. No licensee or permittee may sell, vend, deal or traffic in alcohol beverages to or with a person who is intoxicated.

Anyone who supplies alcohol beverages to an intoxicated person in violation of sec. 125.07(2)(a), Stats. 1991–92, is penalized by being "fined not less than $100 nor more than $500 or imprisoned for not more than 60 days or both." Section 125.07(2)(b), Stats. 1991–92.

[4] Section 125.07(1)(a), Stats. 1991–92, forbids providing alcohol beverages to underage persons as follows:

Section 125.07(1)(a) *Restrictions.* 1. No person may procure for, sell dispense or give away any alcohol beverages to any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.
2. No licensee or permittee may sell, vend, deal or traffic in alcohol beverages to or with any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.

The penalties for violating sec. 125.07(1)(a), Stats. 1991–92, for providing alcohol beverages to underage persons are as follows:

Section 125.07(1)(b) *Penalties.* . . . 2. A person who commits a violation is subject to a forfeiture of:

soned that had the legislature intended the civil immunity statute to protect underage persons, the legislature would have reflected this concern by more severely penalizing those who provide alcohol beverages to underage persons.

## II.

Before probing the constitutionality of the statute we must point out that our constitutional inquiry does not seek to determine whether it is wise, advisable or in the public interest to immunize persons from civil liability for injury arising out of the act of supplying alcohol beverages. Indeed, there are ample reasons for questioning the soundness of sec. 125.035.

The devastating personal, social and economic consequences of drinking are detailed in the media each day and in various other publications.[5] In 1985, the year the legislature enacted the civil immunity statute, 51.5% of the fatal motor vehicle accidents nationwide involved alcohol beverages; these accidents resulted in

---

a. Not more than $500 if the person has not committed a previous violation within 12 months of the violation.

b. Not less than $200 nor more than $500 if the person has committed a previous violation within 12 months of the violation.

c. Not less than $500 nor more than $1,000 if the person has committed 2 previous violations within 12 months of the violation.

d. Not less than $1,000 nor more than $5,000 if the person has committed 3 or more previous violations within 12 months of the violation.

Jail time is not authorized as a penalty for violating the proscription for providing alcohol beverages to underage persons.

[5] See, e.g., Wis. Policy Research Institute, Report, *Broken Bottles: Liquor, Disorder, and Crime in Wisconsin* (vol. 8, No. 4, May 1995).

over 20,000 deaths.[6] Applying this percentage to Wisconsin traffic fatalities, an estimated 400 state deaths can be attributed to motor vehicle accidents involving alcohol beverages during the year the legislature debated the statute at issue.[7]

Not even these staggering statistics accurately portray the devastating effects of the harm caused by alcohol-impaired persons. They fail to account for the many people whose injuries by alcohol-impaired drivers do not result in death. This case is an example in point. Furthermore, these statistics fail to account for injuries and deaths caused by alcohol-impaired persons without the instrumentality of a motor vehicle.

In an attempt to decrease alcohol-related fatalities and injuries several states have enacted statutes making many negligent suppliers of alcohol beverages liable for injuries caused by their patrons.[8] The Wisconsin legislature, on the other hand, has chosen to grant immunity from civil liability to most of those who provide alcohol beverages to others. Although the court may disagree with the wisdom of sec. 125.035(2), it is the constitutionality of the statute, not its wisdom, which the court must address.

The constitutionality of a statute is a question of law that this court reviews *de novo,* benefitting from the analysis of the circuit court. Our constitutional

---

[6] United States Department of Commerce, *Statistical Abstract of the United States, 1994* at 633 (1994).

[7] *Id.* at 632.

[8] *See* James F. Moser, *Liquor Liability Law* at sec. 1.51 (1994) (listing state statutes imposing civil liability on many suppliers of alcohol beverages). *See also* Daphne D. Sipes, *The Emergence of Civil Liability for Dispensing Alcohol: A Comparative Study,* 8 Rev. Litig. 1 (1988).

inquiry is guided by the presumption that the legislative act is constitutional. Furthermore, when a statutory classification is challenged as violative of the equal protection clause, the challenger bears a heavy burden of proving abuse of legislative discretion beyond a reasonable doubt. *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370, 293 N.W.2d 504 (1980) cert. denied, 449 U.S. 1035 (1980).

■

Our first task is to determine the level of scrutiny with which we will review sec. 125.035. If the classification in secs. 125.035(2) and (4) impedes a fundamental right, or categorizes people based on suspect criteria,[9] we subject the statute to strict scrutiny. *Szarzynski v. YMCA,* 184 Wis. 2d 875, 886, 517 N.W.2d 135 (1994). The plaintiffs contend that the statute impinges on a fundamental right, the right to a certain remedy for injuries and wrongs, guaranteed by Wis. Const. Art. I, sec. 9.[10]

The plaintiffs err in urging that a fundamental right is involved. This court has never construed the rights guaranteed by Art. I, sec. 9 to be fundamental. The court has held "that sec. 9, art. I of our constitution, does not entitle Wisconsin litigants to the exact remedy they desire, but merely to their day in court . . .

---

[9] The United States Supreme Court has identified as suspect all classifications based on race, national origin and alienage. John E. Nowak & Ronald D. Rotunda, *Constitutional Law* at 576 (1991). No one argues that sec. 125.035 gives rise to a suspect classification.

[10] Wis. Const., Art. I, sec. 9, reads as follows:

Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

[and that] the legislature may impose reasonable limitations upon the remedies available to parties." *Metzger v. Wisconsin Dept. of Transportation,* 35 Wis. 2d 119, 129, 150 N.W.2d 431 (1967). *See also Vandervelden v. Victoria,* 177 Wis. 2d 243, 252, 502 N.W.2d (Ct. App. 1993), cert. denied, 114 S. Ct. 388 (1993) (concluding that Art. I, sec. 9 does not create rights but rather guarantees access to the courts to enforce existing rights); *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 189, 290 N.W.2d 276 (1980) (determining that no legal rights are conferred by this portion of the constitution). Furthermore, we note that nothing in sec. 125.035 prevents a victim injured by a person impaired by the consumption of alcohol beverages from seeking redress from the alcohol-impaired tortfeasor.

Because sec. 125.035 does not impede a fundamental right or involve a suspect classification, we evaluate the constitutionality of the statute under the rational basis test. The court will uphold the statute if the legislature's distinction among groups of persons is rationally related to a legitimate government purpose. *Szarzynski,* 184 Wis. 2d at 886.[11] This standard does

---

[11] The United States Supreme Court described the rational basis test in *McGowan v. Maryland,* 366 U.S. 420, 425–26 (1961) as follows:

> [T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

not require a statute to treat all persons identically, but it mandates that any distinction have some relevance to the purpose for which the classification is made.

In applying a rational basis standard, a court must exercise judicial restraint. This deference to the legislature reflects the court's awareness that drawing lines and creating distinctions to establish public policy are legislative tasks. Yet the rational basis test is "not a toothless one." *Schweiker v. Wilson,* 450 U.S. 221, 234 (1981) (quoted with approval in *Wisconsin Wine & Spirit Institute v. Ley,* 141 Wis. 2d 958, 964, 416 N.W.2d 914 (Ct. App. 1987)). It allows the court to probe beneath the claims of the government to determine if the constitutional "requirement of some rationality in the nature of the class singled out" has been met. *James v. Strange,* 407 U.S. 128, 140 (1972).

### III.

An examination of the constitutionality of sec. 125.035 must begin with an historical overview of the case law addressing the issue of the civil liability of those furnishing alcohol beverages. Several of these decisions influenced the legislation in issue.

---

This court and the United States Supreme Court have used numerous formulations for the rational basis test. Some equal protection challenges in this court have been analyzed in terms of a five-part rational basis test. *Omernik v. State,* 64 Wis. 2d 6, 19, 218 N.W.2d 734 (1974). We do not use the five-part test because "the essential question posed by those standards . . . is whether there are any real differences to distinguish the favored class . . . from other classes . . . who are ignored by the statute. . . ." *Kallas Millwork Corp. v. Square D,* 66 Wis. 2d 382, 389, 225 N.W.2d 454 (1975).

Under early Wisconsin common law, no cause of action existed against a person who furnished intoxicating liquor "to an able-bodied man." *Seibel v. Leach,* 233 Wis. 66, 67, 288 N.W. 774 (1939) (affirming judgment dismissing plaintiff's claim against a tavern keeper arising out of plaintiff's automobile collision with an intoxicated driver's car). This rule was based on the rationale that liability rests with the person who negligently drinks an intoxicant and that the act of furnishing the intoxicant is too remote to be a proximate cause of injury. *Seibel,* 233 Wis. at 68. *See also Demge v. Feierstein,* 222 Wis. 199, 203, 268 N.W. 210 (1936) (disallowing claim of widow of deceased intoxicated driver against person who knowingly supplied alcohol beverages to the already intoxicated driver).

Several states, including Wisconsin, modified this common law rule by enacting statutes imposing civil liability on some who furnished alcohol beverages. The *Demge* case involved a statute which created a civil cause of action against certain persons who furnished alcohol beverages despite having been notified in writing to forbid the disbursement of alcohol beverages to a particular minor or habitual drunkard. *Demge,* 222 Wis. at 202.[12] In *Farmers Mutual Ins. Co. v. Gast,* 17 Wis. 2d 344, 353, 117 N.W.2d 347 (1962), the court concluded that the statute in issue in *Demge* had preempted the field of civil liability resulting from illegal sales of alcohol beverages and dismissed a claim based on common law negligence.

The rationale underlying the common law rule of no tort liability shifted in 1970, when the court determined that such a rule predicated on proximate cause

[12] For a summary of Wisconsin civil liability statutes from 1839 until 1958, see *Farmers Mut. Auto. Ins. Co. v. Gast,* 17 Wis. 2d 344, 355–363, 117 N.W.2d 347 (1962).

was no longer persuasive.[13] Instead, the court in *Garcia v. Hargrove*, 46 Wis. 2d 724, 176 N.W.2d 566 (1970),[14] determined that the immunity of those supplying alcohol beverages to an "able-bodied man" is predicated on public policy considerations, not on proximate cause. *Garcia*, 46 Wis. 2d at 732. Thus, when a jury determines that a party was negligent in furnishing the alcohol beverage and that the negligence was a substantial factor in causing a third person's injury, it is for the court to determine whether public policy considerations mandate that there be no liability. According to the *Garcia* court, the following public policy factors militate against imposing liability on one furnishing alcohol beverages: (1) the problem of intoxication is a social, not a legal, problem and, hence, a matter to be dealt with by the legislature; (2) holding those who furnish alcohol beverages liable would subject them to exposure each time they served a drink, imposing an unjust financial burden on purveyors; (3) the chain between breach of duty and injury would rarely be clear and, thus, "hard" cases would be the

---

[13] In *Gast*, 17 Wis. 2d at 354, the court recognized that attacks had been leveled at the rationale that the vendee's voluntary consumption of intoxicating beverages breaks the causal link between the negligent sale and the resulting intoxication. The *Gast* court cited Professor Campbell's article which concluded that when a plaintiff alleges and proves that the vendor of intoxicating liquors knew or should have known the vendee was about to drive an automobile on the highways in an intoxicated condition, recovery should be allowed. Professor Campbell viewed the vendor as similar to a person who lends a car to an intoxicated driver, a situation in which the law allows recovery from the lender. Richard V. Campbell, *Work of the Supreme Court—Torts,* 1941 Wis. L. Rev. 110, 116–117.

[14] Affirmed in *Garcia v. Hargrove,* 52 Wis. 2d 289, 190 N.W.2d 181 (1971).

rule; (4) if liability is premised on negligence, no logical basis exists to subject vendors to liability but not social hosts; (5) a new rule of liability would create additional burdens on the courts; and (6) imposing liability on suppliers would erode drinkers' responsibility.[15] The *Garcia* court failed "to find compelling equitable considerations in plaintiff's favor which require this court to abandon a rule of longstanding both in this state and in many others." *Garcia,* 46 Wis. 2d at 736–37.[16]

---

[15] Courts have invoked similar public policy considerations to bar recovery from a negligent tortfeasor in other contexts. These considerations are as follows:

    (1)   The injury is too remote from the negligence;

    (2)   The injury is too wholly out of proportion to the culpability of the negligent tortfeasor;

    (3)   In retrospect it appears too highly extraordinary that the negligence should have brought about the harm;

    (4)   Allowance of recovery would place too unreasonable a burden on the negligent tortfeasor;

    (5)   Allowance of recovery would be too likely to open the way for fraudulent claims; and

    (6)   Allowance of recovery would enter a field that has no sensible or just stopping point. *Colla v. Mandella,* 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957).

[16] A strong dissent in *Garcia* disagreed with the majority opinion on the public policy grounds. The dissent concluded that "a drunk driving an auto and causing an accident is no unusual bizarre result but an every night tragedy." *Garcia,* 46 Wis. 2d at 739. The dissent noted the modern trend in the state courts "to impose common-law negligence liability based upon the commonsense public policy that one who furnishes alcoholic beverages to a person who is, or may reasonably be expected to become, intoxicated, may be held liable if the consumption of said alcoholic beverages is causally related to the damage complained of." *Garcia,* 46 Wis. 2d at 741. For a summary of the dissent's rationale, see *Sorensen v. Jarvis,* 119 Wis. 2d 627, 642–43, 350 N.W.2d 108 (1984).

The court repeated this public policy rationale in *Olsen v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979), another drunk driving case. The *Olsen* court emphasized that a common-law cause of action against someone who furnished alcohol beverages would not be limited to the injuries negligently caused by intoxicated automobile drivers. Such negligence actions against suppliers could extend to intentional assaults by intoxicated persons and injuries inflicted by intoxicated persons on themselves. In addition, the court pointed out that the determination of visible intoxication is highly discretionary; in some instances a person may even obtain alcohol beverages without confronting the purveyor. *Olsen,* 90 Wis. 2d at 490–91. Accordingly, the *Olsen* court concluded that the public policy factors militating against this cause of action in the past were still persuasive and that any change would best be accomplished by the legislature. *Olsen,* 90 Wis. 2d at 488.[17]

Five years later, in *Sorensen v. Jarvis,* the court altered the common law. *Sorensen v. Jarvis,* 119 Wis. 2d 627, 350 N.W.2d 108 (1984). The *Sorensen* court recognized an injured person's cause of action against a retailer who negligently sold alcohol beverages to someone whom the retailer knew or had reason to know was underage and when the underage person's consumption of the alcohol beverage was a cause of another person's injury. The court rejected the public policy rationale invoked in *Garcia* and *Olsen,* and adopted the position of the dissenting justices in those cases. Thus, the immunity of retailers who provide alcohol beverages to underage persons was abrogated.

---

[17] Three justices dissented in *Olsen,* 90 Wis. 2d at 494, including the author of this opinion.

Within a year, the court extended the *Sorensen* rule to abrogate the immunity of social hosts who negligently provide alcohol beverages to underage persons. *Koback v. Crook,* 123 Wis. 2d 259, 366 N.W.2d 857 (1985).

Both *Sorensen* and *Koback* involved providing alcohol beverages to underage persons and were based in part on the statute proscribing the furnishing of alcohol beverages to underage persons. Despite a concurrence in *Koback,* nothing in these decisions expressly limited the new cause of action only to those who negligently provide alcohol beverages to underage persons.[18] Both cases could be read as signalling the court's willingness to abrogate entirely the common law rule of immunity and impose liability on all suppliers of alcohol beverages whose negligence is a substantial factor in causing another person's injury.

Both these cases and the early legislation they construe informed the legislature's enactment of sec. 125.035. They also serve to illustrate the complexity of ascribing liability to those who negligently furnish alcohol beverages. In light of this historical perspective, we next examine the constitutionality of sec. 125.035.

### IV.

To apply the rational basis test in an equal protection analysis, the court should first set forth the legislative classification at issue, then identify the legislative objectives, and finally determine whether the

[18] The concurrence limited the cause of action to a social host who negligently provides alcohol beverages to underage persons.

legislative classification is rationally related to the achievement of an appropriate legislative purpose. In other words, the court must evaluate whether the legislature's objectives justify the statutory classification.

Our first task is to identify the classification created by the civil immunity statute, sec. 125.035. The text of subsections (2) and (4) of sec. 125.035 classifies persons who furnish alcohol beverages into two groups. One class consists of persons who provide alcohol beverages to others whom the provider knows or has reason to know are underage in violation of sec. 125.07(1)(a). The second class consists of persons who supply alcohol beverages to others who have attained the legal drinking age or to persons whom the supplier does not know or does not have reason to know are underage.

The plaintiffs disagree with this statement of the legislative classification. They argue that the circuit court correctly identified the classification created by secs. 125.035(2) and (4) as a classification of victims of the torts of alcohol-impaired persons. The feature that determines into which class a victim is placed is the age of the tortfeasor. The plaintiffs claim that the civil immunity statute allows a victim injured by an intoxicated underage person to bring a cause of action against the provider who furnished the alcohol beverages in violation of the law, but prohibits a victim injured by an intoxicated tortfeasor who has attained the legal drinking age from bringing a cause of action against a person who also supplied the alcohol beverages in violation of the law.

We agree with the plaintiffs that the statute has the effect of treating victims differently. Some victims injured by persons impaired by alcohol beverages may

initiate a suit against those furnishing alcohol beverages to the tortfeasor, while other victims may not. The court has, however, upheld against equal protection challenges other statutes arguably having the same effect.[19] The court has looked to the classification of tortfeasors created by the legislature, not to the effect on the victims, and has upheld the statute when the classification created by the legislature comports with constitutional mandates. *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 575, 426 N.W.2d 33 (1988) (determining that a statute allowing employers to subrogate worker's compensation claims to some negligent health care providers but not to others comports with equal protection guarantees even though "fortuity" may operate to deny some employers' claims). Adhering to these cases, we conclude that the statute creates two classes of persons who furnish alcohol beverages: one class is comprised of certain persons who provide alcohol beverages to underage consumers, and the other class is made up of other persons who supply alcohol beverages.

---

[19] *See, e.g., Szarzynski v. YMCA,* 184 Wis. 2d 875, 517 N.W.2d 135 (1994) (holding the recreational immunity statute, sec. 895.92, constitutional even though persons injured on property owned by individuals or for-profit entities have a cause of action against the owner who charges a fee but persons injured on property owned by a nonprofit organization cannot initiate an action against the not-for-profit property owner); *Stanhope v. Brown County,* 90 Wis. 2d 823, 280 N.W.2d 711 (1979) (concluding that secs. 81.15 and 895.43, limiting the liability of certain municipal tortfeasors, provided equal protection, even though the victims of these tortfeasors were able to recover only $25,000, while the victims of other tortfeasors could seek a full recovery).

Our second and third tasks are to determine the legislative objective in enacting sec. 125.035 and to determine whether the legislative classification is rationally related to that objective. The legislature has not expressly articulated the purpose of sec. 125.035 or the relation between the classification in sec. 125.035 and that purpose.[20] The absence of a clearly articulated legislative purpose for distinguishing between purveyors of alcohol beverages does not compel the court to find the statute constitutionally infirm. Rather "it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination." *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980).

Divining the legislature's objective in granting immunity to most persons furnishing alcohol beverages while imposing civil liability on others is not an easy task. The parties, the state, and the amici variously advance and attack possible legislative objectives.

According to the defendants, the state, and the Civil Trial Counsel of Wisconsin as amicus curiae, protection of underage persons is one possible legislative purpose for sec. 125.035. The plaintiffs condemn this theory as mistaken; they argue that the classification imposing liability only on certain persons who provide

---

[20] An analysis of this bill by the Legislative Reference Bureau indicates that the legislature crafted this civil immunity statute in response to "2 recent [supreme court] cases." The cases apparently were *Sorensen* and *Koback.* Legislative Reference Bureau Analysis of Senate Bill 1, October 1985 Special Session. *See also Kwiatkowski v. Capitol Indemnity Corp.,* 157 Wis. 2d 768, 776, 461 N.W.2d 150 (Ct. App. 1990).

alcohol beverages to underage persons does not comport with the legislative scheme in chapter 125.

The plaintiffs underscore the fact that the legislature seeks in chapter 125 to prohibit not only providing alcohol beverages to persons under the legal drinking age, but also supplying alcohol beverages to intoxicated persons. *See* sec. 125.07, Stats. 1991–92. Indeed, sec. 125.07 imposes a criminal penalty on those who supply alcohol beverages to intoxicated persons,[21] while assessing only a civil forfeiture on providers of alcohol beverages to underage persons.[22] The plaintiffs suggest that this penalty scheme demonstrates a greater legislative concern with deterring those who supply alcohol beverages to intoxicated persons than with deterring those who provide alcohol beverages to underage persons. The plaintiffs submit that if the legislature truly intended sec. 125.035 to protect underage persons, it would have imposed a criminal penalty in sec. 125.07 on providers of alcohol beverages to underage persons.

We do not agree that the penalty scheme of chapter 125 indicates a lesser legislative interest in deterring those who would provide alcohol beverages to underage persons. The plaintiffs err in suggesting that the legislature necessarily imposes criminal penalties rather than civil forfeitures on offenses it determines to be more serious. Indeed, prior to 1980, the legislature imposed criminal penalties, namely fines, imprisonment or both, on those who furnished intoxicating liquors to either underage or intoxicated persons.[23] Then, in 1980, the legislature decriminalized the provi-

---

[21] *See* note 3 *supra.*

[22] *See* note 4 *supra.*

[23] *See, e.g.,* sec. 176.30(1), Stats. 1977.

141

sion of alcohol beverages to underage persons, but continued the criminal penalties imposed on those who supply alcohol to intoxicated persons.[24] A Legislative Council analysis of Assembly Bill 742 creating the 1980 statute reveals that the bill *"attempts to induce increased enforcement of statutes relating to the sale and consumption of beer and liquor by decriminalizing present penalties."*[25] Thus, the imposition of a civil, rather than criminal, penalty on persons providing alcohol beverages to underage persons is entirely consistent with a legislative goal of protecting persons under the legal drinking age.[26]

The plaintiffs further argue that the statute does not protect underage persons; rather, it protects adults who furnish alcohol beverages to other adults who injure third parties. Underage persons, the plaintiffs argue, are not protected unless they are the victims of certain underage alcohol-impaired persons. *See Kwiatkowski v. Capitol Indemnity Corp.,* 157 Wis. 2d 768, 461 N.W.2d 150 (Ct. App. 1990) (holding the provider not liable when an underage person to whom the alcohol beverage was furnished is injured).

We are not persuaded by the plaintiffs' argument. The fact that sec. 125.035 does not allow underage drinkers who themselves are injured to bring a cause of

[24] Sections 47, 49, 50, Ch. 331, Laws of 1979.

[25] Wisconsin Legislative Council Staff Information Memorandum 80–9, Substantive Provisions of Assembly Bill 742, Relating to the Possession and Sale of Beer and Liquor, May 13, 1980 (emphasis added).

[26] The statute has been amended recently to impose criminal penalties on providers of alcohol beverages to underage persons under certain circumstances. Section 125.07(1)(b), Stats. 1993–94.

action against the person who provided the alcohol beverages does not defeat the conjectured legislative purpose of protecting underage persons. Facilitating compensation for injured underage drinkers is not the only means of attempting to protect people under the legal drinking age. The legislature may have determined that sheltering people under the legal drinking age by deterring those who might otherwise furnish alcohol beverages to them, rather than compensating the injured underage person, would better serve the goal of protecting young people. Consequently, we conclude that the classification fits the legislative purpose of protecting underage persons.[27]

---

[27]While we have discovered no state with a statutory scheme regulating the provision of alcohol to underage persons and intoxicated persons identical to that found in ch. 125, courts in jurisdictions with similar statutory schemes have upheld civil immunity statutes when challenged on equal protection grounds. *Cory v. Shierloh,* 29 Cal. 3d 430 (1981) (concluding that the legislature could rationally seek to protect underage persons by preserving a cause of action by an injured person against a licensed provider of alcohol beverages to an obviously intoxicated underage person, while extending general immunity to other suppliers of alcohol beverages); *Charlton v. Kimata,* 815 P.2d 946 (Colo. 1991) (upholding a statute that imposed liability on a social host for injury caused by willfully serving alcohol beverages to an underage person—but not to a visibly intoxicated adult—and imposing liability on commercial vendors for willfully and knowingly furnishing liquor to an underage or visibly intoxicated person, based on the reasonable goal of protecting underage persons); *Barnes v. B.K. Credit Service, Inc.,* 461 So. 2d 217, 219–220 (Fla. App. Ct. 1984) (holding constitutional a statute that immunized from civil liability those who furnish alcohol beverages to persons who have attained the legal drinking age, but exposed to liability those who provide alcohol to underage or habitually addicted persons,

143

Having found that the legislature's distinction in sec. 125.035 between two groups of persons who furnish alcohol beverages is rationally related to the legitimate governmental purpose of protecting persons under the legal drinking age, we could conclude our analysis and hold the statute constitutional.[28] Nevertheless we examine another possible legislative rationale—concern for the burden liability might impose on alcohol beverage suppliers—because we

because the statute furthers the "ultimate legitimate interest of safeguarding from harm one of immaturity imbibing intoxicants").

[28] Another objective posited by the parties is the protection of the public from injury caused by alcohol-impaired persons, that is the promotion of public safety. The plaintiffs concede that public safety might justify the imposition of liability on a class which provides alcohol beverages to persons they know or have reason to know are under the legal drinking age. The plaintiffs assert that the legislature's classification in sec. 125.035 is not reasonably related to concerns for public safety because it immunizes from liability those who furnish alcohol beverages to most of the persons likely to cause injury to others.

The state, filing a brief as a nonparty, counters that the classification is rationally related to promoting public safety because there is a greater likelihood of harm when underage persons drink; imposing tort liability on those who provide alcohol beverages to underage persons is a deterrent to furnishing alcohol beverages to underage persons, and accordingly, promotes public safety. The court of appeals in *Symes v. Milwaukee Mut. Ins. Co.,* 178 Wis. 2d 564, 571, 505 N.W.2d 143 (Ct. App. 1993), recognized the validity of treating statutes proscribing the furnishing of alcohol beverages to underage persons as safety statutes as follows: "The predictable result of furnishing intoxicants to minor is their loss of judgment and control. There is, therefore, good reason to consider statutes prohibiting the sale, furnishing or giving of intoxicants to minors as 'safety' statutes."

144

think it likely that the legislature crafted sec. 125.035 in response to this public policy concern.

The legislature may have enacted sec. 125.035 to adopt the rulings of *Garcia* and *Olsen.* The court's public policy pronouncements in these cases persuaded this court for many years. They continue to influence courts in other jurisdictions which have retained the common-law rule of immunity and have declared that the competing economic, societal and policy considerations for imposing liability on suppliers of alcohol beverages are for the legislature to determine.[29] Although perhaps no longer persuasive to the court, these public policy concerns cannot now be cast aside as unreasonable.

As we explained earlier, one public policy justification for common law immunity was a desire to avoid exposing suppliers to liability every time they furnish alcohol beverages. The legislature may have intended sec. 125.035 to protect alcohol beverage suppliers in the same manner.

This rationale may have been all the more salient for the legislature given the perceived difficulties in determining when persons become intoxicated. If the legislature were to impose civil liability on suppliers who know or have reason to know a person is intoxicated, the suppliers would arguably be negligent per se for violating sec. 125.07(2)(a)1, imposing criminal penalties on those who provide alcohol beverages to intoxicated persons. Neither sec. 125.07(2) nor common sense and observation provide a standard for evaluat-

---

[29] *See, e.g., Ling v. Jan's Liquors,* 703 P.2d 731 (Kan. 1985); *Felder v. Butler,* 438 A.2d 494 (Md. 1981); *Holmes v. Circo,* 244 N.W.2d 65 (Neb. 1976).

ing a person's level of intoxication.[30] Even counting drinks furnished would not necessarily avoid liability because the supplier may not know how much a person has previously consumed.[31] Because no definitive standard determines who is intoxicated, the legislature may have determined that even a diligent supplier will have no reasonable way to limit or prevent exposure to civil liability for having furnished an alcohol beverage to an intoxicated person.[32] The legislature might have

[30] For the purposes of operating motor vehicles, the statutes set forth a general standard for prohibited alcohol concentrations. Section 340.01(46m), Stats. 1993–94, provides that "Prohibited alcohol concentration" means one of the following:

(a) If the person has one or no prior convictions, suspensions or revocations . . . a blood alcohol concentration of 0.1% or more by weight of alcohol in the persons's blood or 0.1 grams or more of alcohol in 210 liters of the person's breath.
(b) If the person has 2 or more prior convictions, suspensions or revocations . . . a blood alcohol concentration of 0.08% or more by weight of alcohol in the person's blood or 0.08 grams or more of alcohol in 210 liters of the person's breath.

These concentration levels are different for drivers under the age of 19, sec. 346.63(2m), Stats. 1993–94, and for commercial motor vehicle drivers and operators, sec. 346.63(6) and 346.63(7), Stats. 1993–94.

[31] Different persons will be affected differently by the same quantity of alcohol beverages. And different people show intoxication differently even if they are at the same BAC level. A consumer may have a blood alcohol level of .1% or higher and yet reveal no outward signs of intoxication. Field, *Alcohol and Other Drugs in Wisconsin Drivers: The Laboratory Perspective,* 69 Marq. L. Rev. 235, 244 (1986).

[32] We note, however, that training courses are available for servers and managers to increase awareness of intoxication. Research has indicated that properly trained alcohol servers can identify "problem drinkers." Ruth Castel, "Drunk Driving & Liquor Liability," *Insurance Information Institute Reports,*

concluded that adoption of a rule of liability might force suppliers of alcohol beverages to defend suits even if they served only one or two drinks. A supplier might ultimately defeat a claim at trial, yet nevertheless be burdened with the cost of defending the action.

In short, the legislature might have been persuaded, even if this court is not, that the consequences of imposing liability for negligently supplying alcohol beverages to persons of legal drinking age would place too great and unjust a financial burden on the suppliers of alcohol beverages, even when balanced with the seriousness of the injury caused by intoxicated persons.

In contrast, the legislature could have been persuaded that suppliers of alcohol beverages are much better able to avoid furnishing alcohol beverages to underage persons than to intoxicated persons. The Wisconsin Department of Transportation issues both photo driver's licenses and photo identification cards stating the age of the card holder. Section 343.50, Stats. 1993–94. Verification of age through documentary proof is a defense against penalties. Section 125.07(6), Stats. 1991–92.

We conclude that a legislative desire to reaffirm the public policy concerns in favor of immunizing alco-

---

October 1994 (referring to a Virginia Polytechnic Institute finding that trained servers effectively intervened in 100% of the cases observed, as opposed to 45% for untrained servers) (LEXIS, Insure library, allnws file). *See also,* Katherine M. Mahoney, *Responsible Service of Alçohol: A Way To Reduce Injuries and Protect Against Liability,* 19 Golden Gate U. L. Rev. 279 (1989). The city of Madison adopted an ordinance requiring applicants for operators' and managers' licenses to complete an Alcohol Awareness Training Program before a license can be issued. Madison Ord., Alco. Bev. Reg. sec. 38.05(3)(i).

hol beverage suppliers, with the recognition that such concerns do not apply to certain providers of alcohol beverages to underage persons, is a purpose rationally related to the distinction in sec. 125.035 between two classes of persons who furnish alcohol beverages. Because this court relied on these public policy concerns in 1979 for its refusal to abrogate the common-law rule of immunity, we can hardly now say that the same reasoning fails to offer a rational basis for the legislature's enactment of sec. 125.035 in 1985.

We conclude that a rationale for sec. 125.035 can be discovered with effort. The legislature simply drew a line of demarcation in sec. 125.035 beyond which it refused to extend civil liability. Constitutional equal protection safeguards do not require that the legislature fix its lines with mathematical certainty, or even that it invoke its policy-making judgment in the best or wisest way. *Stanhope v. Brown County,* 90 Wis. 2d 823, 843, 280 N.W.2d 711 (1979) (citing *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 377, 378 (1977)). The court must accept the legislature's demarcation unless it strays from any reasonable mark.

The legislature may have intended to codify the common-law rule as it existed prior to 1984, prohibiting a cause of action against suppliers of alcohol beverages for the torts of those to whom they furnish alcohol beverages, with the *Sorensen-Koback* exception that exposes to liability those who provide alcohol beverages to underage persons. The legislature also may have created the classes in sec. 125.035 with the intent to reaffirm the public policy concerns in favor of immunizing suppliers of alcohol beverages who have no reasonable basis for determining intoxication and may

148

have no reasonable basis for determining underage status.

These legitimate legislative goals are rationally related to the statute's classification of those who furnish alcohol beverages. If the egregious facts alleged in the complaint are true, the immunity provided under sec. 125.035 seems harsh and unfair. But this policy decision was for the legislature, not this court.

Accordingly, we conclude that sec. 125.035 comports with the equal protection guarantees of the Wisconsin and United States constitutions. We reverse the order of the circuit court and remand with instructions to dismiss the complaint against defendants Deanne Von Arx and Scott Meland.

*By the Court.*—The order of the circuit court is reversed and the cause remanded.