COURT OF APPEALS
DECISION
DATED AND FILED

November 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No. 2022AP181-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CM752

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

THOMAS W. BATTERMAN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Marathon County: MICHAEL H. BLOOM, Judge. *Affirmed*.

¶1 GILL, J.[1] Thomas Batterman appeals a judgment of conviction, entered upon a jury's verdict, for operating a motor vehicle with a prohibited alcohol concentration (PAC), as a second offense. Batterman argues that the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

circuit court erred by excluding evidence of his performance on two field sobriety tests. He asserts that this evidence was relevant to show that his blood alcohol concentration (BAC) did not, in fact, exceed the legal limit of .08. He also contends that the court's exclusion of this evidence violated his constitutional right to present a defense. We reject Batterman's arguments and affirm.

## BACKGROUND

¶2 The State filed a criminal complaint charging Batterman with operating a motor vehicle while intoxicated (OWI), as a second offense. The State later filed an amended complaint that added a PAC charge, as a second offense.

¶3 According to the amended complaint, at 10:14 p.m., an officer observed a vehicle traveling at forty-six miles per hour in a location where the posted speed limit was thirty-five miles per hour. The officer initiated a traffic stop and identified Batterman as the driver of the vehicle. The officer noticed a strong odor of intoxicants coming from the vehicle and observed that Batterman's eyes were glassy and his speech was slightly slurred. When asked how much he had to drink, Batterman responded, "[N]ot a lot."

¶4 The officer then administered three field sobriety tests—the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. According to Batterman, the officer observed five out of six clues of impairment on the HGN test, one clue on the walk-and-turn test, and two clues on the one-leg-stand test. Following the tests, the officer placed Batterman under arrest for OWI and transported him to a hospital for a blood draw. Subsequent testing of the sample showed a BAC of .124.

2

¶5 Prior to trial, Batterman moved to exclude all evidence regarding his performance on the HGN test. He argued that the results of that test were invalid because the officer failed to comply with the proper procedures for administering the test. Following a hearing, the circuit court agreed and granted Batterman's motion to exclude evidence regarding his performance on the HGN test.

¶6 Five days before Batterman's jury trial, the State moved to dismiss the OWI charge and proceed to trial on the PAC charge only. On the morning of the first day of trial, the circuit court granted the State's motion and dismissed the OWI charge with prejudice.

¶7 The circuit court and the parties then discussed the effect that the dismissal of the OWI charge would have on the evidence presented at trial. Batterman's attorney explained:

> It's my understanding, based on the comments the State made off the record in chambers as well as the Court's own comments regarding the same subject matter, that because the OWI charge has now been dismissed with prejudice, it renders irrelevant any testimony regarding the officer's observations of Mr. Batterman's condition, his performance on field sobriety tests, what he was actually arrested for at the scene, et cetera.

Batterman's attorney argued that the court should not exclude this evidence because doing so would "tell[] an incomplete story," causing the jury to speculate about the reason for Batterman's arrest.

¶8 Batterman's attorney also argued that Batterman's performance on the walk-and-turn and one-leg-stand tests was "exculpatory as it relates to the prohibited alcohol concentration charge" because the number of clues observed on those tests "correlate[s] … to the person being above or below the legal limit in

3

Wisconsin." According to Batterman's attorney, the officer's observation of relatively few clues during the walk-and-turn and one-leg-stand tests undermined the State's claim that Batterman's BAC was over the legal limit at the time of driving, despite the blood test showing a BAC of .124.

¶9      The State, in turn, argued that following the dismissal of the OWI charge, there were only two elements at issue in Batterman's trial: whether Batterman operated his vehicle on a roadway and whether he did so with a PAC. The State asserted that introducing evidence about the officer's investigation during the traffic stop, including the field sobriety tests, would "confuse the issues and mislead the jury" regarding the elements of the PAC charge.

¶10      The State also argued that Batterman's performance on the walk-and-turn and one-leg-stand tests was irrelevant to whether Batterman had a PAC because "[i]t is not unusual or unheard of for someone to be considered not impaired or even for an OWI not to be issued[,] but for [the person] to eventually have a prohibited alcohol concentration." In addition, the State asserted that the defense had not made an offer of proof as to how it would link Batterman's performance on the tests to his BAC at the time of driving. The State emphasized that there was "no expert … coming in to testify that there was any issue with the [blood test] results from the State Lab of Hygiene."

¶11      In response, Batterman's attorney asserted that any officer who has undergone National Highway Traffic Safety Administration training "is instructed if they see X number of clues on the walk-and-turn or the one-leg[-]stand, they can conclude that the person has a 75 percent probability of being above a .10 or a .08, whatever the case may be." Counsel then argued:

> If a person doesn't exhibit a sufficient number of clues on those tests and the tests are linked to BAC levels at least broadly enough to categorize them above or below, that's relevant to undermining the jurors' faith in what the State is asking the jury to conclude based on the blood test result.

¶12 The circuit court ruled that evidence regarding Batterman's performance on the walk-and-turn and one-leg-stand tests would not be admitted at trial. The court acknowledged that, generally speaking, "the training that officers receive regarding the administration of field sobriety tests … indicates that a certain number of clues will indicate X probability that the subject has a blood alcohol concentration of whatever." The court reasoned, however, that "[i]t is a different question scientifically as to whether the absence of clues correlates in the same way with a person having X percent probability of being below a prohibited alcohol concentration." The court stated the defense had not presented "an empirical or other evidentiary basis" to support an argument that the "absence of clues" means that a person does not have a PAC. Accordingly, the court stated it could not "find that … the absence of clues correlates with a non-prohibited alcohol concentration in the same way that the presence of clues indicates to officers a certain percentage likelihood that there is a prohibited alcohol concentration." The court also reasoned, "Normally a blood alcohol concentration result is challenged with a curve defense and whatnot. That's based on numbers of drinks and specific time frames and so it is an empirical process that the analyst can respond to."[2]

---

[2] This court has previously explained the concept of a "curve" defense as follows:

(continued)

5

¶13     The jury ultimately found Batterman guilty of the PAC charge. Batterman now appeals.

## DISCUSSION

¶14     As noted above, Batterman argues that the circuit court erroneously concluded that evidence regarding his performance on the walk-and-turn and one-leg-stand tests was irrelevant to the PAC charge and was therefore inadmissible. Batterman also contends that the court's exclusion of this evidence violated his constitutional right to present a defense.

## I. Relevance

¶15     Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT.

---

> [A] person goes through three stages of processing alcohol: absorption, plateau, and elimination. These stages can be represented on a graph as a curve with the alcohol content rising until it peaks and then falling as the body eliminates the alcohol. Thus, a person who is in the process of absorbing alcohol may be under the legal limit while driving but subsequently exceed the limit when a test is taken.

*State v. Brown*, No. 2016AP83-CR, unpublished slip op. ¶5 (WI App Dec. 14, 2016); *see also* WIS. STAT. RULE 809.23(3)(b) (an unpublished opinion authored by a single judge and issued on or after July 1, 2009, may be cited for its persuasive value).

Batterman did not argue that the circuit court should admit evidence regarding his performance on the walk-and-turn and one-leg-stand tests because that evidence was relevant to a curve defense, nor has he raised that argument on appeal. Furthermore, Batterman did not expressly raise a curve defense at trial. He merely argued, more generally, that the blood test result did not prove beyond a reasonable doubt that he had a PAC at the time of driving because his blood was drawn fifty minutes after he operated his vehicle.

6

§ 904.01. "Evidence which is not relevant is not admissible." WIS. STAT. § 904.02.

¶16 "A circuit court has broad discretion in determining the relevance and admissibility of [proffered] evidence." *State v. Hammer*, 2000 WI 92, ¶43, 236 Wis. 2d 686, 613 N.W.2d 629. "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771. The question is not whether this court, as an initial matter, would have admitted the evidence in question, but whether the circuit court exercised its discretion in accordance with accepted legal standards and the facts of record. *Hammer*, 236 Wis. 2d 686, ¶43.

¶17 In this case, the circuit court did not erroneously exercise its discretion by determining that evidence regarding Batterman's performance on the walk-and-turn and one-leg-stand tests was not relevant to the PAC charge and was therefore inadmissible. To convict Batterman of the PAC charge, the State needed to prove two elements: (1) that Batterman operated a motor vehicle on a highway; and (2) that Batterman had a PAC—in this case, an alcohol concentration above .08—at the time he operated a motor vehicle. *See* WIS JI—CRIMINAL 2660 (2020). Because the OWI charge was dismissed, the State did not need to prove that Batterman was under the influence of an intoxicant at the time he operated his vehicle—that is, that his ability to operate a vehicle was impaired because of his consumption of an alcoholic beverage. *See* WIS JI—CRIMINAL 2663 (2020).

¶18 The circuit court reasonably determined that while evidence regarding Batterman's performance on the walk-and-turn and one-leg-stand tests

would have been relevant as to whether Batterman was intoxicated, it was not relevant as to whether his BAC exceeded the legal limit. The purpose of administering field sobriety tests "is to determine whether a suspect can follow directions and whether the person can divide his or her attention and exhibit fine motor skills," given that the impairment of these abilities is indicative of intoxication. *City of West Bend v. Wilkens*, 2005 WI App 36, ¶17, 278 Wis. 2d 643, 693 N.W.2d 324. However, "a person can commit a PAC offense without being or appearing intoxicated or impaired." *State v. Blatterman*, 2015 WI 46, ¶73, 362 Wis. 2d 138, 864 N.W.2d 26 (Ziegler, J., concurring). "Different persons will be affected differently by the same quantity of alcohol beverages. And different people show intoxication differently even if they are at the same BAC level. A consumer may have a blood alcohol level of .1% or higher and yet reveal no outward signs of intoxication." *Doering v. WEA Ins. Grp.*, 193 Wis. 2d 118, 146 n.31, 532 N.W.2d 432 (1995). Consequently, the fact that a person performs relatively well on field sobriety tests—exhibiting only one or two clues of impairment—does not necessarily indicate that the person does not have a PAC.

¶19 The circuit court explained that while it is generally known that "a certain number of clues will indicate X probability" that a person has a PAC, Batterman had not presented any evidence to support a determination that the number of clues observed by the officer in this case showed a particular probability that Batterman did not have a PAC. Batterman asserts that the court's reasoning in this regard was flawed because "[o]bviously, the fewer clues displayed on any test, the less likely it is that a person's alcohol concentration will be above the prohibited limit." Batterman did not provide any evidence in support of this assertion in the circuit court, however, nor has he done so on appeal. While it might be obvious that a lesser number of clues on a field sobriety test correlates

with a lesser degree of intoxication or impairment, it is not self-evident that a lesser number of clues also correlates with a person having a BAC below the legal limit. *See Wilkens*, 278 Wis. 2d 643, ¶17 (stating that field sobriety tests "are observational tools, not litmus tests that scientifically correlate certain types or numbers of 'clues' to various blood alcohol concentrations").

¶20    In his reply brief, Batterman posits that evidence linking his performance on the field sobriety tests to a BAC below the legal limit was unnecessary because it is "common sense" that the absence of clues on a field sobriety test correlates with a lower BAC. In support of this contention, Batterman presents a hypothetical scenario regarding a law enforcement officer "running a stationary radar trap on a cloverleaf highway off-ramp" who observes a vehicle entering the off-ramp at what the officer believes is a speed exceeding the recommended limit of thirty miles per hour. The officer's radar gun indicates that the vehicle is traveling at ninety miles per hour. Batterman asks us to "[a]ssume" that

> because of the tight turning radius of the cloverleaf off-ramp, it is patently unreasonable to believe the curve could have been negotiated by any vehicle travelling at three times the recommended speed. Any vehicle travelling that fast would likely have flown off the radius of the ramp into the abutting culvert.

¶21    Batterman asserts that, in this hypothetical, the facts regarding the "lay of the land" are inconsistent with the officer's radar reading of ninety miles per hour, "just as an individual's exceptional performance on field sobriety tests might be inconsistent with the value of a blood test result returned by a state laboratory." Regardless of whether Batterman's speeding hypothetical is relevant, we are not necessarily convinced that any correlation between a low number of clues on a field sobriety test and a BAC below the legal limit is self-evident or a

matter of "common sense." While it is not beyond the comprehension of an average juror that a defendant's performance on field sobriety tests may be indicative of intoxication, intoxication is not an element of a PAC charge. *See id.*, ¶1 (stating that field sobriety tests assist officers in "discerning various indicia of intoxication" and that "it is not beyond the ken of the average person to understand such indicia and to form an opinion about whether an individual is intoxicated").

¶22 Batterman also contends that the circuit court's reasoning was inconsistent because "if there is a correlation between the clues exhibited and a person having 'a certain percentage likelihood that there is a prohibited alcohol concentration,'" then "despite the exhibited number of clues, there always exists a percentage possibility that the alcohol concentration is ***not*** correlated to the number of observed clues because ***none*** of the field sobriety tests are 100% accurate." Batterman's concession that field sobriety tests are not always accurate does not support his claim that his performance on the field sobriety tests in this case was probative of whether he had a PAC; rather, his concession that field sobriety tests may be inaccurate supports a determination that they are not relevant to showing whether his BAC exceeded the legal limit.

¶23 Ultimately, in determining that Batterman's performance on the walk-and-turn and one-leg-stand tests was not relevant to the PAC charge, the circuit court applied the relevant legal standards to the facts of record and used a rational process to reach a reasonable conclusion. As such, we cannot conclude that the court erroneously exercised its discretion by excluding this evidence.

## II. Constitutional Right to Present a Defense

¶24 Batterman also argues that the circuit court's exclusion of evidence regarding his performance on the walk-and-turn and one-leg-stand tests violated his constitutional right to present a defense. "Every defendant in a criminal case has the right under the Sixth Amendment to present his or her defense." *State v. Ward*, 2011 WI App 151, ¶16, 337 Wis. 2d 655, 807 N.W.2d 23. Whether a circuit court's exclusion of evidence violated that right is a question of constitutional fact that we review independently. *State v. Wilson*, 2015 WI 48, ¶47, 362 Wis. 2d 193, 864 N.W.2d 52.

¶25 As an initial matter, we note that it appears Batterman forfeited his argument that the circuit court's evidentiary ruling violated his constitutional right to present a defense by failing to raise that argument in the circuit court. Batterman does not cite any portion of the record showing that he raised this argument below, and we have not found anything in the record showing that he did so. We need not address arguments raised for the first time on appeal. *See State v. Van Camp*, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997); *see also State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) ("We will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum.").

¶26 Regardless, Batterman's constitutional argument also fails on the merits. The constitutional right to present evidence is not absolute. *State v. Pulizzano*, 155 Wis. 2d 633, 646, 456 N.W.2d 325 (1990). "Confrontation and compulsory process only grant defendants the constitutional right to present *relevant evidence* not substantially outweighed by its prejudicial effect." *Id.* (emphasis added). Here, we have already concluded that the circuit court did not

11

erroneously exercise its discretion by concluding that the evidence in question was not relevant to the PAC charge. As such, the exclusion of the evidence did not violate Batterman's constitutional right to present a defense.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.